**Exhibit B**



## ARCH SPECIALTY INSURANCE COMPANY
### (A Missouri Corporation)

Home Office Address:
2345 Grand Blvd., Suite 900
Kansas City, MO 64108

Administrative Address:
One Liberty Plaza, 53rd Floor
New York, NY 10006
Tel: (800) 817-3252

## AMWINS REAL ESTATE DEVELOPER PROFESSIONAL LIABILITY INSURANCE POLICY

## DECLARATIONS

**Policy Number:**  SPL0066403-01                    **Renewal Of:**  SPL0066403-00

**Producer Name:**  AmWINS Brokerage of Georgia, LLC

**THIS POLICY PROVIDES CLAIMS-MADE COVERAGE. CLAIMS MUST FIRST BE MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND MUST BE REPORTED IN WRITING TO THE COMPANY NO LATER THAN SIXTY (60) DAYS AFTER THE END OF THE POLICY PERIOD, OR THE EXTENDED REPORTING PERIOD, IF EXERCISED. THE PAYMENT OF CLAIM EXPENSES REDUCES THE LIMITS OF INSURANCE. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

**Item 1.**   **Named Insured:**   LPC Multifamily Holdco, LLC

**Item 2.**   **Mailing Address:**   2000 McKinney Avenue, Suite 1000
Dallas, TX 75201

**Item 3.**   **Policy Period:**   **From:**  4/1/2022     **To:**   4/1/2023
(12:01 A.M. Standard time at the address stated in Item 2.)

**Item 4.**   **Retroactive Date:**   10/1/1991

**Item 5.**   **Prior or Pending Litigation Date:**   4/1/2021

**Item 6.**   **Professional Liability Limit of Liability and Retention**

    **A.**   **Each Claim Limit of Liability:**                    $5,000,000
    **B.**   **Aggregate Limit of Liability Each Policy Period:**   $5,000,000
    **C.**   **Retention Each Claim**                              $50,000

**Item 7.**   **Sub-limits of Liability (part of and not in addition to the Professional Liability Limit of Liability):**

|  | Each Claim Sub-Limit of Liability |
|---|---|
| **Pollutants Sub-Limit of Liability** | $1,000,000 |
| **Non-Party Investigation Expenses** | $0 |
| **Discrimination Sub-Limit of Liability** | $5,000,000 |

**Item 8.**   **Premium:**   $414,274
    **State Tax:**   $NA   **By Broker**
    **Stamping Fee:**   $NA   **By Broker**

**Item 9.**        **Extended Reporting Period:**
                   One Year (12 Months):         % of Annual Premium
                   Three Years (36 Months)       % of Annual Premium
                   Six Years (72 Months):        % of Annual Premium

**Item 10.**       **Notices to Insurer:**

Claims or Potential Claims:                              All other Notices:

Arch Specialty Insurance Company              Arch Specialty Insurance Company
  10909 Mill Valley Road, Suite 210            Professional Liability Underwriting
    P.O. Box 542033                              One Liberty Plaza, 53rd Floor
      Omaha, NE 68154                             New York, NY 10006
Phone:  877-688-ARCH (2724)                         Fax: (212) 651-6499
Fax:      866-266-3630
E-mail:  Claims@Archinsurance.com


**Item 11.**       **Endorsements:**
                   See Attached schedule of endorsements and notices.




Arch Specialty Insurance Company is licensed in the state of Missouri only.

06 MPX0317 00 01 18

# SCHEDULE OF FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| **NAMED INSURED:** LPC Multifamily Holdco, LLC | | TERM:  4/1/2022 – 4/1/2023 |
| **POLICY NUMBER:** SPL0066403-01 | | |

| ENDT. NO. | FORM NO. | TITLE |
|---|---|---|
| | 06 MPX0317 00 01 18 | AMWINS REAL ESTATE DEVELOPER PROFESSIONAL LIABILITY INSURANCE POLICY DECLARATIONS |
| | 00 ML0012 00 01 03 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| | 00 MPX0318 00 01 18 | AMWINS REAL ESTATE DEVELOPER PROFESSIONAL LIABILITY INSURANCE POLICY |
| | 06 ML0002 00 12 14 | SIGNATURE PAGE |
| | 06 ML0014 00 03 08 | CLAIMS HANDLING PROCEDURES |
| | 00 ML0065 00 06 07 | U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS |
| | 00 ML0042 44 12 19 | IMPORTANT NOTICE TO ALL TEXAS POLICYHOLDERS |
| 1 | 00 ML0003 00 04 12 | SERVICE OF SUIT |
| 2 | 00 MPX0639 00 04 21 | AMEND DEFINITION OF REAL ESTATE DEVELOPMENT SERVICES |
| 3 | 00 MPL0199 00 11 18 | AMEND INSURED VS INSURED EXCLUSION PRO-RATA PAYMENTS |
| 4 | 00 MPX0636 00 04 21 | AMEND INSURED DEFINITION |
| 5 | 00 MPL0152 00 03 17 | ADD INSURED ENDORSEMENT |
| 6 | 00 MPX0388 00 08 18 | ADD INSURED FOR VICARIOUS LIABILITY ONLY |
| 7 | 00 MPL0169 00 02 18 | AMEND DEFINITION OF CLAIM MANAGER |
| 8 | 00 MPX0637 00 04 21 | JOINT VENTURE AS INSURED |
| 9 | 00 MPX0638 00 04 21 | FEE DISPUTE EXCLUSION |
| 10 | 00 MPX0640 00 04 21 | COMMERCIAL PROPERTY EXCLUSION |
| 11 | 00 MPX0645 00 05 21 | AMEND CLAIM DEFINITION ENDORSEMENT AND DISCIPLINARY PROCEEDING COVERAGE |
| 12 | 00 MPX0643 00 05 21 | LOCK BOX ENDORSEMENT |
| 13 | 00 MPX0743 00 06 22 | REQUIRED EMPLOYMENT PRACTICES LIABILITY AND THIRD PARTY DISCRIMINATION COVERAGE |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

# AMWINS REAL ESTATE DEVELOPER PROFESSIONAL LIABILITY INSURANCE POLICY

## TABLE OF CONTENTS

1.   INSURING AGREEMENTS

2.   SPOUSAL, DOMESTIC PARTNER, ESTATE AND LEGAL REPRESENTATIVE COVERAGE

3.   DEFINITIONS

4.   COVERAGE TERRITORY

5.   EXTENDED REPORTING PERIOD

6.   EXCLUSIONS

7.   LIMIT OF LIABILITY & RETENTION

8.   DEFENSE & SETTLEMENT OF CLAIMS

9.   CLAIM AND POTENTIAL CLAIM NOTICES

10.   ALLOCATION

11.   SUBROGATION

12.   OTHER INSURANCE

13.   CHANGES IN CONTROL

14.   APPLICATION

15.   SUITS AGAINST THE INSURER AND DISPUTE RESOLUTION

16.   NAMED INSURED'S AUTHORITY

17.   CANCELLATION

18.   BANKRUPTCY

19.   NOTICES

20.   ALTERATION, ASSIGNMENT & TITLES

21.   REFERENCES TO LAWS

22.   ENTIRE AGREEMENT

23.   POLICY CHANGES

24.   REQUIRED GENERAL LIABILITY COVERAGE

306

# AMWINS REAL ESTATE DEVELOPER PROFESSIONAL LIABILITY INSURANCE POLICY<sup>SM</sup>

In consideration of the payment of the premium and in reliance upon the **Application**, the **Insurer** specified in the Declarations (the **"Insurer"**) and the **Insureds** agree as follows:

## 1. INSURING AGREEMENTS

### A. REAL ESTATE DEVELOPER PROFESSIONAL LIABILITY

The **Insurer** shall pay **Loss**, in excess of the Retention, on behalf of any **Insured** resulting from a **Claim** first made against such **Insured** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act** committed on or subsequent to the **Retroactive Date**.

### B. NON-PARTY INVESTIGATION EXPENSES

The **Insurer** shall reimburse an **Insured** for **Non-Party Investigation Expenses** arising out of **Real Estate Development Services**, in excess of the Retention, resulting from an investigation that first commenced during the **Policy Period**, provided that **Non-Party Investigation Expenses** will not exceed the applicable Sub-limit of Liability stated in Item 7 of the Declarations per **Policy Period**.

## 2. SPOUSAL, DOMESTIC PARTNER, ESTATE AND LEGAL REPRESENTATIVE COVERAGE

Coverage shall apply to a **Claim**, otherwise covered under this Policy, made against the lawful spouse or **Domestic Partner** of an **Insured**, or if an **Insured** dies, becomes incapacitated, or files for bankruptcy, such **Insured's** estate, heirs, assigns, or legal representatives, provided that:

**A.** such **Claim** arises solely out of:

    **a.** such person's status as a spouse, **Domestic Partner**, trustee, heir, assignee or legal representative of such **Insured**; or

    **b.** such person's ownership of property sought as recovery for a **Wrongful Act**;

**B.** the **Insured** is named in such **Claim** along with such persons or entities; and

**C.** no coverage shall apply to any **Claim** for a **Wrongful Act** of such persons or entities.

## 3. DEFINITIONS

The following terms shall have the meanings specified below:

**A.** **"Application"** means the application for this Policy, including any information or materials submitted, in connection with or incorporated therein.

**B.** **"Bodily Injury"** means physical injury to the body, sickness or disease sustained by a person including death resulting there from. **"Bodily Injury"** also means mental injury, mental anguish, mental tension, emotional distress, pain and suffering, or shock, whether or not resulting in or from physical injury to the body, sickness, disease or death of any person.

**C.** **"Claim"** means any:

1.  written demand for monetary damages or non-monetary relief commenced by the receipt by any **Insured** of such demand;

2.  civil proceeding against any **Insured** for monetary or non-monetary relief commenced by the receipt by, or the service upon, any **Insured** of a complaint or similar pleading;

3.  administrative or regulatory proceeding commenced by the receipt by, or service upon, any **Insured** of a notice of charges or similar document;

4.  civil, administrative, or regulatory investigation of an **Insured** commenced upon such **Insured's** receipt of a formal order of investigation, or once such **Insured** is identified by name by an investigating authority as a person or entity against whom a proceeding described in 2 or 3 above may be commenced;

5.  written request to an **Insured** to toll or waive a period or statute of limitations regarding a potential **Claim** as described in 1 – 3 above commenced by the receipt by such **Insured** of such request;

6.  civil, administrative or regulatory investigation of any person or entity other than an **Insured** brought by a disciplinary or regulatory official, board or agency, commenced by the filing of or the service upon any **Insured**, of a subpoena, summons, investigative demand and formal investigative order or similar document, but only with respect to Insuring Agreement B. Non-Party Investigation Expenses.

All **Claims** arising out of the same **Wrongful Act** or any **Interrelated Wrongful Acts** shall be deemed to be a single **Claim** first made on the earliest date that:

1.  any of such **Claims** was commenced, even if such date is before the **Policy Period**;

2.  notice of such **Wrongful Act** or any **Interrelated Wrongful Act** was given to the **Insurer** pursuant to Section 9.B; or

3.  notice of any fact, circumstance, or situation including such **Wrongful Act** or any **Interrelated Wrongful Act** was given under any prior policy of which this Policy is a renewal or replacement.

No coverage is provided for any **Claim** made, or deemed first made, before the **Policy Period**.

D.  **"Claim Manager"** means any natural person:

1.  chief executive officer;

2.  chief operating officer;

3.  chief financial officer;

4.  general counsel;

5.  chief compliance officer; or

6.  risk manager,

of an **Insured Organization**.

E.   **"Computer System"** means any computer hardware, software or firmware, and components thereof including data stored thereon, that is owned or leased by an **Insured Organization** and is under the direct operational control of an **Insured Organization**.

F.   **"Defense Costs"** means reasonable and necessary fees and expenses incurred in the defense or appeal of a **Claim**. **Defense Costs** shall include the premium for any appeal, attachment or similar bond, provided that the **Insurer** shall have no obligation to furnish such bond. **Defense Costs** exclude any compensation, benefit, expenses or overhead of, or paid to, any **Insured**.

G.   **"Domestic Partner"** means any natural person who enters into a civil union or qualifies as a domestic partner under any federal, state or local law or under the provisions of any formal program established by the **Named Insured**.

H.   **"Insured"** means:

   1.   the **Insured Organization**;

   2.   any current or former principal, partner, executive officer, director, employee or any independent contractor under contract with and indemnified by the **Insured Organization** but only with respect to the performance of **Real Estate Development Services** on behalf of the **Insured Organization**.

   3.   any entity required to be named by contract as an **Insured**; provided however this Policy does not apply to any **Claim** alleging, based upon, arising out of, or resulting from, directly or indirectly out of any act, error, omission, misstatement, misleading statement, breach of duty or neglect by any such entity or any of its employees or representatives. Furthermore solely for the purpose of determining the application of Section 6. Exclusions G. any entity required to be named by contract as an **Insure**d shall not be considered an **Insured**.

J.   **"Insured Organization"** means:

   1.   the **Named Insured**; or

   2.   any **Subsidiary**.

K.   **"Interrelated Wrongful Acts"** means **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes.

L.   **"Loss"** means **Defense Costs**, damages, settlements, judgments, pre- and post-judgment interest, and punitive, exemplary or multiple damages to the extent such damages are insurable under applicable law.

   **Loss**, other than **Defense Costs**, excludes any:

   1.   taxes, fines or penalties imposed by law;

   2.   amount for which the **Insureds** are not liable or for which the claimants are without legal recourse to the **Insureds**;

   3.   non-monetary or injunctive relief;

   4.   fees, deposits, commissions or charges; or

     **5.**    matters that are uninsurable pursuant to applicable law.

     **6.**    **Non-Party Investigation Expenses**

     Notwithstanding 5. above, the insurability of the above types of **Loss** shall be governed by the laws of any applicable jurisdiction that does not prohibit coverage for such **Loss**.

**M.**    **"Malicious Code"** means any virus, Trojan, worm or other similar malicious software program, code or script designed to infect, harm, harm data on, or steal data from, a **Computer System**.

**N.**    **"Named Insured"** means the organization specified in Item 1 of the Declarations.

**O.**    **"Network Security Breach"** means any:

     **1.**    unauthorized access to, or unauthorized use of, a Computer System; or

     **2.**    transmission of Malicious Code into or from a **Computer System**.

**P.**    **"Non-Party Investigation Expenses"** reasonable and necessary legal fees and expenses incurred (excluding any compensation, benefit, expenses or overhead of, or paid to an **Insured**), with the **Insurer's** consent, for responding to any formal civil, administrative or regulatory investigation, brought by a disciplinary or regulatory official, board or agency, commenced by the filing of or the service upon any **Insured**, of a subpoena, summons, investigative demand or formal investigative order or similar document to investigate any person or entity other than an **Insured**.

**Q.**    **"Private Information"** means any individual's name in combination with any of the following:

     **1.**    social security number;

     **2.**    drivers license number or any other state identification number;

     **3.**    medical or healthcare data, including protected health information;

     **4.**    non-public personal information as defined in any **Privacy Law**; or

     **5.**    confidential or proprietary business information of a third-party that is protected under a written non-disclosure agreement between such third-party and an **Insured**.

**R.**    **"Personal Injury"** means any actual or alleged:

     **1.**    false arrest, detention, imprisonment or malicious prosecution;

     **2.**    wrongful entry or eviction;

     **3.**    invasion of the right of privacy or

     **4.**    libel, slander or other defamatory or disparaging material; or a publication or an utterance in violation of an individual's right of privacy.

**S.**    **"Policy Period"** means the period specified in Item 3 of the Declarations, subject to any cancellation prior to the scheduled expiration date.

T. **"Pollutants"** means any solid, liquid, gaseous, biological, radiological or thermal contaminant or irritant including without limitation, smoke, vapor, soot, fumes, acids, alkalis, chemicals, mold, fungi, odors, noise, lead, oil or oil products, radiation, asbestos or asbestos containing products, waste or any electric, magnetic or electromagnetic field of any frequency. **Pollutants** also includes, without limitation, materials to be recycled, reconditioned or reclaimed.

U. **"Privacy Law**" means those parts of the following statues or regulations regulating the use and protection of non-public personal information (as defined in such statutes or regulation):

 1. Health Insurance Portability and Accountability Act of 1996 (HIPAA);

 2. Gramm-Leach Bliley Act of 1999 (GLBA);

 3. consumer protection and unfair and deceptive trade practice laws enforced by state Attorneys General or the Federal Trade Commission, including but not limited to Section 5(a) of the Federal Trade Commission Act, 15. U.S.C § 45 (a), as amended;

 4. security breach notification laws that require notice to individuals of the actual or potential theft of their non-public personal information, including but not limited to the California Security Breach Notification Act of 2003 (CA SB1386); or

 5. other state, federal or foreign privacy laws requiring reasonable SECURITY for non-public personal information, or a privacy policy limiting the sale, disclosure or sharing of non-public personal information or providing individuals with the right to access or correct non-public personal information.

V. **"Privacy Violation"** means any:

 1. theft or unauthorized copying of **Private Information** while in the care, custody or control of an **Insured**; or

 2. violation of a **Privacy Law** by an **Insured**.

W. **"Property Damage"** means:

 1. physical injury to, loss or destruction of, tangible property, including loss of use thereof; or

 2. loss of use of tangible property which has not been physically injured, lost, damaged or destroyed.

X. **"Real Estate Development Services"** means real estate development, property management, construction management, real estate consulting and real estate project management performed by the **Insured** for others for a fee or for owned properties without a fee and any other services described by endorsement (if applicable).

Y. **"Retroactive Date"** means the date set forth in Item 4. of the Declarations.

Z. **"Subsidiary"** means any entity engaged in the performance of **Real Estate Development Services** in which the **Named Insured** has an ownership interest of greater than 50% of the assets of such entity prior to the inception date of this Policy or any entity which becomes a **Subsidiary** pursuant to the provisions of Section 13 of this Policy.

00 MPX0318 00 01 18                Page 6 of 16

311

**AA.** **"Wrongful Act"** means any actual or alleged negligent act, error or omission, misstatement, misleading statement, breach of duty or neglect or **Personal Injury** committed by any **Insured**; or by any other person for whom the **Insured Organization** is legally responsible, solely in the performance of or failure to perform **Real Estate Development Services**.

## 4.   COVERAGE TERRITORY

The insurance afforded by this Policy applies worldwide.  Where suits are brought or **Claims** are made outside of the United States of America and its territories and possessions, Puerto Rico, or Canada, the following additional provisions apply:

**A.** The **Insurer** shall have the right but not the duty to investigate, defend or settle any such **Claims** brought against an **Insured**;

**B.** If the **Insurer** elects not to investigate, defend or settle any such **Claim**, the **Insured** shall, under the **Insurer**'s supervision, arrange for such investigation and defense thereof as is reasonably necessary and subject to the **Insurer**'s prior authorization, shall effect such settlement thereof as the **Insurer** and the **Insured** deem expedient;

**C.** The **Insurer** will reimburse the **Insured** for the reasonable cost of such investigation and defense and the amount of any settlement or judgment in excess of the Retention amount stated in the Declarations, all subject to and within the Limits of Liability stated in the Declarations; and

**D.** Such reimbursement shall be made in United States currency at the rate of exchange prevailing on the date the judgment is rendered or the date that the amount of the settlement is agreed upon or the date expenditure is made.

## 5.   EXTENDED REPORTING PERIOD

**A.** **Automatic Extended Claims Reporting Period**

**1.** If the **Insurer** or the **Named Insured** terminates or non-renews this Policy for any reason, other than nonpayment of premium, the **Named Insured's** failure to comply with any term and condition, fraud or material misrepresentation, the **Named Insured** shall be entitled to a period of sixty (60) days from the date of policy termination to report **Claims** which are made against the **Insured** prior to such termination date and that arise out of a **Wrongful Act** occurring prior to such termination date.

**2.** This Automatic Extended Claims Reporting Period may not be canceled by the **Insurer** and does not require the payment of an additional premium.  This Automatic Extended Claims Reporting Period shall be included within the Optional Extended Claims Reporting Period if such is purchased.

**3.** The fact that the period during which the **Claims** can be made against the **Insured** and reported to the **Insurer** is extended by virtue of the Automatic Extended Claims Reporting Period shall not in any way increase the Limits of Liability of this Policy.

**B.** **Optional Extended Claims Reporting Period**

**1.** If this Policy is cancelled or non-renewed, for any reason other than non-payment of premium, and the **Named Insured** does not obtain replacement coverage as of the effective date of such cancellation or non-renewal, the **Named Insured** shall have the right, upon payment of the additional premium stated in Item 9 of the Declarations, to elect a continuation of coverage afforded by this Policy for the Additional Period stated

in Item 9 of the Declarations (the "Optional Extended Reporting Period"). If elected, the Optional Extended Reporting Period shall commence upon the effective date of such cancellation or nonrenewal. Such continuation of coverage shall apply only to a **Claim**, otherwise covered by this Policy, first made against the **Insureds** during the Optional Extended Reporting Period for a **Wrongful Act** occurring prior to the end of the **Policy Period**.

2.    The rights contained in this Section shall terminate unless a written notice of election together with the additional premium due stated in Item 9 of the Declarations is received by the **Insurer** within 90 days after the effective date of cancellation or nonrenewal.

3.    The additional premium for the Optional Extended Reporting Period shall be fully earned at the inception of the Optional Extended Reporting Period. The Optional Extended Reporting Period is not cancelable.

4.    There is no separate Limit of Liability for the Optional Extended Reporting Period.

## 6.    EXCLUSIONS

The **Insurer** shall not pay **Loss** or **Non-Party Investigation Expenses**:

A.    of an **Insured** for, based upon, arising from, or in any way related to the gaining of any personal profit, remuneration or advantage to which such **Insured** was not legally entitled, if established by any final non-appealable adjudication adverse to such **Insured**; provided this exclusion will not apply to **Defense Costs**;

B.    of an **Insured** for, based upon, arising from, or in any way related to any deliberately fraudulent or criminal act or omission or any willful violation of law by such **Insured** if established by any final non-appealable adjudication adverse to such **Insured**; provided this exclusion will not apply to **Defense Costs**;

C.    in connection with any **Claim** for, based upon, arising from, or in any way related to any fact, circumstance or situation that, before the inception date of this Policy, was the subject of any notice given under any Policy of which this Policy is a renewal or replacement;

D.    in connection with any **Claim** for, based upon, arising from, or in any way related to any **Wrongful Act** or **Interrelated Wrongful Act** committed thereafter that any **Insured** had knowledge of prior to the first policy issued to the **Named Insured** and continuously renewed by the **Insurer** and had a reasonable basis to believe that such **Wrongful Act** or **Interrelated Wrongful Act** committed thereafter could give rise to a **Claim**;

E.    in connection with any **Claim** alleging, based upon, arising out of, or resulting from, directly or indirectly, any demand, suit or proceeding pending, or order, decree or judgment made or initiated against the **Insured** on or prior to the Prior or Pending Litigation Date specified in Item 5 of the Declarations or which has a common nexus, fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes underlying or alleged therein;

F.    in connection with any **Claim** for, based upon, arising from, or in any way related to **Bodily Injury** to an **Insured**;

G.    in connection with any **Claim** by or on behalf of any **Insured** against any other **Insured**;

H.    for any actual or alleged violation of: (i) the Securities Act of 1933; (ii) the Securities Exchange Act of 1934; (iii) the Investment Company Act of 1940; (iv) the Investment Advisors Act; (v) any foreign, federal, state or local blue sky or securities laws; (vi) the Racketeer Influenced and Corrupt Organizations Act; (vii) any workers' compensation, unemployment, social security, disability or pension benefits laws; (viii) the Employee Retirement Income Security Act of 1974 (except Section 510 thereof); (ix) the National Labor Relations Act; (x) the Worker Adjustment and Retraining Notification Act; (xi) the Consolidated Omnibus Budget Reconciliation Act of 1985; (xii) the Occupational Safety and Health Act, or (xiii) any similar laws or any order, ruling or regulation issued pursuant to those laws mentioned in (i) through (xii) above;

I.    in connection with any **Claim** for, based upon, arising from, or in any way related to any liability of others assumed by the **Insured** under any contract, warranty, guarantee, cost estimate or promise or the **Insureds** breach of any contract, warranty, guarantee, cost estimate or promise including any actual or alleged misrepresentation as to price or quality of real estate, homes, units or other portions of property being developed.  This exclusion does not apply; however, to the extent liability would attach to the **Insured** in the absence of such contract(s), warranty(ies), guarantee(ies), cost estimate(s) or promise(s) or warranty(ies) or guarantee(ies) to perform **Real Estate Development Services** consistent with applicable industry standards or with reasonable skill or care.

J.    in connection with any **Claim** for, based upon, arising from, or in any way related to any **Insured's** service at any time as a director, officer, trustee, regent, governor, independent contractor or equivalent executive, or as an employee, of any entity other than an **Insured Organization** even if such service is with the knowledge and consent, or at the request, of an **Insured Organization**;

K.    in connection with any **Claim** for, based upon, arising from, or in any way related to any actual or alleged misappropriation, theft, plagiarism, infringement or violation of any patent, copyright, trademark, trade secret, trade dress, trade name, service mark, service name, title or slogan;

L.    in connection with any **Claim** for, based upon, arising from, or in any way related to any actual, alleged or threatened discharge, dispersal, seepage, migration, release, emission escape or transportation of **Pollutants**, including, without limitation any direction, request or order to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; provided however this exclusion shall not apply to the failure to disclose **Pollutants** in the sale of any real property subject to the Sub-Limit of Liability in Item 7. Of the Declarations;

M.    for any actual or alleged failure to effect or maintain any insurance or bond;

N.    in connection with any **Claim** for, based upon, arising from, or in any way related to any unsolicited electronic faxes, emails, telephone calls or unsolicited communications, including without limitation, **Claims** arising out of unsolicited electronic messages, chat room postings, bulletin board postings, newsgroup postings, "pop-up" or "pop-under" Internet advertising or fax-blasting, direct mailing or telemarketing, or **Claims** involving actual or alleged violations of: (i) the Telephone Consumer Protection Act (TCPA); (ii) the Controlling the Assault of Non-Solicited Pornography and Marketing Act (CAN-SPAM Act of 2003); (iii) the Drivers Privacy Protection Act, (iv) the Fair Credit Reporting Act (FCRA), (v) the Fair and Accurate Credit Transaction Act (FACTA of 2003); or (vi) any other foreign, federal, state or local statute, regulation or ordinance that addresses, limits or prohibits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information; provided however this exclusion shall not apply to a **Claim** brought by a current, former or potential tenant for a violation of the Fair Credit Reporting Act (FCRA)

314

subject to a $25,000 Sub-Limit of Liability which shall be part of and not in addition to the Aggregate Limit of Liability.

**O.** in connection with any **Claim** for, based upon, arising from, or in any way related to any actual or alleged wrongful employment practice, including, without limitation, any discrimination, harassment, hostile work environment, wrongful dismissal, discharge or termination, retaliation, wrongful disciplinary action, deprivation of career opportunity, failure to employ or promote, inadequate work place, policies or procedures, the Fair Labor Standard Act or negligent evaluation of employees;

**P.** in connection with any **Claim** for, based upon, arising from, or in any way related to any actual or alleged discrimination, humiliation or harassment in any form or manner, including, but not limited to, race, creed, color, religion, ethnic background, national origin, age, handicap, disability, gender, sex, sexual orientation or preference, pregnancy, marital status, retaliation, or any other protected class under any federal, state, local or other law; provided however this exclusion shall not apply to a **Claim** brought by a tenant, former tenant or applicant for tenancy alleging discrimination subject to the Sub-Limit of Liability in Item 7. of the Declarations;

**Q.** in connection with any **Claim** for, based upon, arising from, or in any way related to any actual or alleged conversion, commingling, availability or misuse of funds or any form of money or any guarantee of a specified rate of return or interest;

**R.** in connection with any **Claim** for, based upon, arising from or in any way related to any actual or alleged intentional false advertising or misrepresentation in advertising of the **Professional Services** performed by an **Insured**;

**S.** in connection with any Claim for, based upon, arising from or in any way related to any actual or alleged unauthorized or illegal collection or intentional sharing of **Private Information**, including but not limited to the collection of **Private Information** using cookies, spyware, or other malicious code, or the failure to provide adequate notice that **Private Information** is being collected or shared;

**T.** of an **Insured** for, based upon, arising from, or in any way related to a **Network Security Breach** or **Privacy Violation**;

**U.** in connection with any **Claim** for, based upon, arising from, or in any way related to any services as an attorney, accountant, actuary, tax preparer, tax consultant, securities broker, securities dealer, registered representative of a securities broker or dealer, financial planner or advisor, insurance agent or broker, nurse, doctor of medicine, veterinary medicine or dentistry, architect or engineer;

**V.** in connection with any **Claim** for, based upon, arising from, or in any way related to any activities as a builder or general contractor; provided however this exclusion shall not apply to construction management or real estate project management of a sub-contractor who is not an **Insured**;

**W.** in connection with any **Claim** for, based upon, arising from, or in any way related to any formulation, promotion, syndication, offer, sale or management of any limited partnership, general partnership, real estate investment or other security, including any interest therein or obtaining any financing for any real property or development;

**X.** in connection with any **Claim** for, based upon, arising from or in any way related to unfair trade practices or violation of consumer protection laws.

315

## 7. LIMIT OF LIABILITY & RETENTION

**A.** Subject to subparagraph B. below, the Each Claim Limit of Liability specified in Item 6.A. of the Declarations shall be the maximum amount for each **Claim**. The **Non-Party Investigation Expenses**, Pollutants and Discrimination Sub-limits of Liability shall be part of, and not in addition to, the Each Claim Limit of Liability.

**B.** The Aggregate Limit of Liability specified in Item 6.B of the Declarations is the maximum aggregate amount that the **Insurer** shall pay for all **Loss** or **Non-Party Investigation Expenses** under this Policy regardless of the number of **Claims** made. If the Limit of Liability is exhausted, the premium for this Policy shall be fully earned.

**C.** **Defense Costs** shall be part of, and not in addition to, each applicable Limit of Liability. Payment of **Defense Costs** by the **Insurer** shall reduce each applicable Limit of Liability.

**D.** The **Insurer** shall pay covered **Loss** or **Non-Party Investigation Expenses** arising from each **Claim** covered under this Policy only to the extent that such **Loss** is in excess of the applicable Retention specified in Item 6.C of the Declarations. The Retention shall be paid by the **Insured** and shall be applicable to each **Claim** and shall include all **Loss** and **Non-Party Investigation Expenses** up to the Retention amount for each **Claim**. The **Insurer** may at its sole discretion advance the payment of **Loss** within the Retention. Any **Loss** and **Non-Party Investigation Expenses** paid by the **Insurer** pursuant to a duty to defend or otherwise that is within any applicable Retention shall be reimbursed by any **Insured** upon the **Insurer's** written request within 30 days

**E.** The **Insurer** shall pay covered **Loss** or **Non-Party Investigation Expenses** only to the extent such **Loss** or **Non-Party Investigation Expenses** exceed the applicable Retention. The Retention shall be borne by the **Insureds** uninsured at the **Insureds'** own risk.

## 8. DEFENSE & SETTLEMENT OF CLAIMS

**A.** The **Insurer** shall have the right and duty to defend each **Claim** for which the Insurer receives notice, even if such **Claim** is groundless, false or fraudulent. The **Insurer** may make any investigation it deems appropriate.

**B.** The **Insurer's** duty to defend any **Claim** shall end upon exhaustion of any applicable Limit of Liability. If the Limit of Liability is exhausted, the premium for this Policy shall be fully earned.

**C.** The **Insureds** shall not admit nor assume any liability, make any settlement offer, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** without the prior written consent of the **Insurer**, such consent not to be unreasonably withheld. The Insurer shall not be liable for any admission, assumption, offer, settlement, stipulation, or **Defense Costs** to which it has not consented.

**D.** The **Insurer** may, with the written consent of the **Insureds**, settle any **Claim** for a monetary amount that the **Insurer** deems reasonable. If the **Insured** refuses to consent to any settlement of a **Claim** recommended by the **Insurer** and acceptable to a claimant, and elects to contest the **Claim**, then the **Insurer** shall not pay **Loss** for such **Claim** in excess of:

   **1.** the amount of the proposed settlement plus **Defense Costs** incurred prior to such refusal; and

     **2.**    80% of **Loss** incurred for such **Claim** in excess of the amount specified in 1. above.

**E.**    The **Insureds** shall give to the **Insurer** all information and cooperation as the **Insurer** may reasonably request. Upon the **Insurer's** request, the **Insureds** shall attend hearings, trials, and any other such proceedings shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and conducting the defense of any **Claim**.

**F.**    **Mediation**

    If the Company and the Insured agree to use mediation to resolve a claim brought against the insured and if such **Claim** is resolved thereby, the Retention stated in the Declarations shall be reduced by 50% for such **Claim** subject to a maximum reduction of $25,000.

**G.**    The **Insurer** and the **Insured** shall mutually agree to the appointment of counsel, but even in the absence of such agreement, the **Insured** may select counsel subject to the Arch Litigation Management Guidelines.

    Should the **Insurer** and **Insured** be unable to mutually agree on counsel and the **Insured** selects counsel, the **Insurer** shall only pay the hourly rate that would have been charged had the **Insurer's** choice of counsel been retained.

## 9.    CLAIM AND POTENTIAL CLAIM NOTICES

**A.**    As a condition precedent to coverage, any **Claim Manager** shall give the Insurer written notice of any **Claim** as soon as practicable after any **Claim Manager** becomes aware of such **Claim**, but no later than: (i) 60 days after the end of the **Policy Period**; or (ii) the end of the Extended Reporting Period, if applicable. Notwithstanding the foregoing, if the **Insurer** provides written notice that this Policy is being canceled for nonpayment of premium, then written notice of any **Claim** shall be given to the **Insurer** prior to the effective date of cancellation.

**B.**    If any **Claim Manager** becomes aware of a **Wrongful Act** during the **Policy Period** that may reasonably be expected to give rise to a **Claim** against an Insured for which coverage may be available, and if written notice of such **Wrongful Act** is given to the **Insurer** during the **Policy Period** specifying the (i) reasons for anticipating such a **Claim**, (ii) nature and date of the **Wrongful Act**, (iii) identity of the **Insureds** involved, (iv) injuries or damages sustained, (v) names of potential claimants and (vi) manner in which the **Insureds** first became aware of the **Wrongful Act**, then any **Claim** subsequently arising from such Wrongful Act shall be deemed to be a **Claim** first made at the time that the Insurer receives such notice.

## 10.    ALLOCATION

If the **Insureds** incur **Loss** or **Non-Party Investigation Expenses** that is only partially covered by this Policy because a **Claim** includes both covered and uncovered matters or is made against both covered and uncovered parties, then the **Insurer** shall allocate 100% of **Defense Costs** to covered **Loss**, and **Loss** other than **Defense Costs** or **Non-Party Investigation Expenses** shall be allocated based upon: (i) the relative legal and financial exposures of any covered and uncovered parties or covered and uncovered matters; and (ii) if a settlement occurs, the relative benefit of the parties from settlement of such covered and uncovered portions of such **Claim**.

## 11.    SUBROGATION

The **Insurer** shall be subrogated to all of the **Insureds'** rights of recovery regarding any payment of **Loss** or **Non-Party Investigation Expenses** under this Policy. The **Insureds** shall do everything

necessary to secure and preserve such rights, including, without limitation, the execution of any documents necessary to enable the **Insurer** to effectively bring suit in the name of the **Insureds**. The **Insureds** shall do nothing to prejudice the **Insurer's** position or any rights of recovery. The **Insurer** shall not subrogate against any **Insured**. Notwithstanding the foregoing the **Insurer** will waive any right of recovery it may have against any person or organization where required by a contract entered into by the **Insured** prior to such **Loss**.

## 12. OTHER INSURANCE

Coverage under this Policy shall apply only in excess of the applicable Retention herein, and over any other valid and collectible insurance regardless of whether such other insurance is stated to be primary, excess, contributory, contingent or otherwise, unless such other insurance is written specifically excess over the Limits of Liability of this Policy by reference in such other insurance to this Policy's Policy Number.

## 13. CHANGES IN CONTROL

### A. Takeover of Named Insured

If, during the **Policy Period**:

1. any person or entity or group of persons and/or entities acting in concert acquires securities or voting rights resulting in ownership by such person(s) and/or entity(ies) of more than 50% of the outstanding securities representing the present right to vote for the election of directors or equivalent positions of the **Named Insured**; or

2. the **Named Insured** merges into or consolidates with another organization such that the **Named Insured** is not the surviving organization,

then coverage shall continue under this Policy, but only for **Wrongful Acts** occurring before such transaction. No coverage shall be available for any **Wrongful Act** occurring after such transaction. Upon such transaction, the entire premium for this Policy shall be deemed fully earned. The **Named Insured** shall give the **Insurer** written notice of such transaction as soon as practicable, but not later than 90 days after the effective date of such transaction.

### B. Acquisition or Creation of a Subsidiary

If, during the Policy Period, any Named Insured:

1. acquires or creates a **Subsidiary**; or

2. merges with another organization such that the **Named Insured** is the surviving entity,

then such newly created, acquired or merged organization and its **Insureds** shall be covered for any **Wrongful Act** occurring after such acquisition, merger or creation. No coverage shall be available for any **Wrongful Act** of any new **Insureds** occurring before such transaction or for any **Interrelated Wrongful Acts** thereto.

If the current annual gross revenues of any newly acquired or merged organization exceeds 35% of the current annual gross revenues of the **Named Insured** as reflected in the most recent **Application** submitted with the **Insured**, then the **Named Insured** shall give the **Insurer** written notice of the acquisition or merger as soon as practicable but not later than 90 days after the effective date of such transaction. Subject to the expiration of the **Policy Period**, any continuation of coverage for such newly acquired or merged entity and its **Insureds** beyond 90 days after the transaction shall be subject to any additional terms and

conditions, including additional premium, required by the **Insurer**.  The **Insureds** shall furnish all information regarding such transaction as the **Insurer** shall request.

**C.    Loss of Subsidiary Status**

If, during or prior to the **Policy Period**, any entity ceases to be a **Subsidiary**, then coverage for such entity and its **Insureds** shall continue until termination of this Policy but only for any **Wrongful Act** occurring prior to the date such entity ceased to be a **Subsidiary**.

## 14.    APPLICATION

**A.**    The **Insureds** represent and agree that the statements and information contained the **Application** are true, accurate and complete; that each representation is deemed material to the acceptance of the risk assumed by the **Insurer** and that this Policy is issued in reliance upon the truth and accuracy of such representations contained within the **Application**.  This Policy embodies all of the agreements existing between the **Insureds** and the **Insurer** and any of its representatives.

**B.**    If the **Application** contains misrepresentations or omissions made with intent to deceive or that materially affect the acceptance of the risk or the hazard assumed by the **Insurer**, this Policy shall be void ab initio.

**C.**    For the purpose of determining coverage:

**1.**    the **Application** shall be construed as a separate application for coverage by each natural person **Insured**;

**2.**    knowledge possessed by any natural person **Insured** shall not be imputed to any other natural person **Insured**; and

**3.**    only knowledge possessed by the **Insured Organization's** chief executive officer, chief financial officer, or general counsel shall be imputed to an **Insured Organization**.

## 15.    SUITS AGAINST THE INSURER AND DISPUTE RESOLUTION

**A.**    No suit or other proceeding shall be commenced by any **Insureds** against the **Insurer** unless there shall have been full compliance with all the terms and conditions of this Policy.

**B.**    No person or organization shall have any right under this Policy to join the **Insurer** as a party to any **Claim** against the **Insureds** nor shall the **Insurer** be impleaded by the **Insureds** in any such **Claim**.

**C.**    In the event that a dispute arises in connection with rights and obligations owed under this Policy, the **Insured(s)** and the **Insurer** shall participate in a non-binding mediation in which the parties shall attempt in good faith to resolve such dispute.  Either the **Insured(s)** or the **Insurer** shall have the right to commence a judicial proceeding, or if the parties agree, submit the dispute to a binding arbitration, in order to resolve such dispute.  However, no judicial proceeding or arbitration shall be commenced prior to the termination of the mediation and until at least 90 days has passed from the termination of the mediation.  The costs and expenses of any mediation, or any arbitration, shall be split equally by the parties.

## 16.    NAMED INSURED'S AUTHORITY

The **Named Insured** shall act on behalf of all **Insureds** regarding all matters under this Policy, including, without limitation, cancellation, election of the Extended Reporting Period, transmission and receipt of notices, reporting of **Claims**, acceptance of endorsements, payment of premiums, and receipt of return premiums.

## 17.  CANCELLATION

**A.**  The **Insurer** may cancel this Policy for non-payment of premium by sending not less than 10 days notice to the **Named Insured**.  This Policy may not otherwise be cancelled by the **Insurer**.

**B.**  Except as otherwise provided, the **Named Insured** may cancel this Policy by sending written notice of cancellation to the **Insurer**.  Such notice shall be effective upon receipt by the **Insurer** unless a later cancellation date is specified therein.

**C.**  If the **Insurer** cancels this Policy, unearned premium shall be calculated on a pro rata basis.  If the **Named Insured** cancels this Policy, unearned premium shall be calculated at the **Insurer's** customary short rates.  Payment of any unearned premium shall not be a condition precedent to the effectiveness of such cancellation.  The **Insurer** shall refund any unearned premium as soon as practicable.

## 18.  BANKRUPTCY

Bankruptcy or insolvency of any **Insured** shall not relieve the **Insurer** of any of its obligations under this Policy, nor deprive the **Insurer** of any of its rights and defenses under this Policy.

In the event of the bankruptcy or insolvency of any **Insured**, the **Insurer** shall advance **Loss** within the Retention, but shall have the right to assert any appropriate claim or demand in such proceeding for payment of any obligations of any **Insured**, including, without limitation, any amounts which the **Insurer** advances on behalf of any **Insured** within the Retention.

## 19.  NOTICES

**A.**  Notices to the **Insured** shall be sent to the **Named Insured** at the address specified in Item 2. of the Declarations.

**B.**  Notices to the **Insurer** shall be sent to the applicable e-mail, facsimile, or other address specified in Item 10 of the Declarations, include the policy number of this Policy, and become effective upon receipt.

## 20.  ALTERATION, ASSIGNMENT & TITLES

**A.**  Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or change in any part of this Policy nor prevent the **Insurer** from asserting any right under the terms of this Policy.

**B.**  Assignment of any interest under this Policy shall not bind the **Insurer** unless such assignment is acknowledged by a written endorsement issued by the **Insurer**.

**C.**  The titles of the sections of, and endorsements to, this Policy are for reference only.  Such titles shall not be part of the terms and conditions of coverage.

## 21.  REFERENCES TO LAWS

**A.** Any statute, act, or code mentioned in this Policy shall be deemed to include all amendments of, and rules and regulations promulgated under, such statute, act, or code.

**B.** Any statute, act, or code mentioned in this Policy that is followed by the phrase "or any similar law" shall be deemed to include all similar laws of all jurisdictions throughout the world, including, without limitation, any common law.

## 22.   ENTIRE AGREEMENT

This Policy, including the Declarations, written endorsements, and the **Application** shall constitute the entire agreement between the **Insurer** and the **Insureds** or any of its agents regarding the insurance provided hereunder.

## 23.   POLICY CHANGES

This Policy shall not be changed in any manner except by a written endorsement issued by the **Insurer**.

## 24.   REQUIRED GENERAL LIABILITY COVERAGE

As a condition precedent for coverage for any **Bodily Injury** or **Property Damage**, the **Named Insured** agrees and warrants that general liability insurance, including products completed/completed operations and premises/operations, covering **Bodily Injury** and **Property Damage**, shall be kept in force during the **Policy Period**. The amount of coverage shall be no less than the Limit of Liability in Item 6. A. of the Declarations.



Signature Page

IN WITNESS WHEREOF, Arch Specialty Insurance Company has caused this policy to be executed and attested.

_____
John Mentz
President

_____
Patrick K. Nails
Secretary

06 ML0002 00 12 14                                                                                     Page 1 of 1

# Claims Handling Procedures

An important value of your insurance coverage is the ability of the insurance company to respond when you have a claim. Arch Specialty Insurance Company is committed to providing its insureds with effective claim services.

Notices of each incident, claim or suit must be sent immediately to:

Arch Specialty Insurance Company
Professional Liability Claims
1299 Farnam Street, Suite 500
Omaha, NE  68102
P.O. Box 542033
Omaha, NE  68154
Phone:  877 688-ARCH (2724)
Fax:  866 266-3630
E-mail:  Claims@ArchInsurance.com

You will be contacted by a representative of the company's Claim Department. This representative will confirm receipt of the loss notice directly to you, provide a company claim number for all future correspondence, refer to legal counsel if necessary, and discuss further handling of the claim.

06 ML0014 00 03 08

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully**.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;

- Front organizations;

- Terrorists;

- Terrorist organizations; and

- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http://www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

# Have a complaint or need help?

If you have a problem with a claim or your premium, call your insurance company. If you can't work out the issue, the Texas Department of Insurance may be able to help.

Even if you file a complaint with the Texas Department of Insurance, you should also file a complaint or appeal through your insurance company. If you don't, you may lose your right to appeal.

**Arch Insurance Group**
To get information or file a complaint with your insurance company:
   **Call: 1-866-413-5550**
   **Toll-free: 1-866-413-5550**
   Online: **http://www.archcapgroup.com**
   Email: **consumercomplaints@archcapservices.com**
   Mail: **Harborside 3**
      **210 Hudson Street, Suite 300**
      **Jersey City, NJ  07311-1107**

**The Texas Department of Insurance**
To get help with an insurance question or file a complaint with the state:
   Call with a question: 1-800-252-3439
   File a complaint: www.tdi.texas.gov
   Email: ConsumerProtection@tdi.texas.gov
   Mail: MC 111-1A, P.O. Box 149091, Austin, TX 78714-9091

# ¿Tiene una queja o necesita ayuda?

Si tiene un problema con una reclamación o con su prima de seguro, llame primero a su compañía de seguros. Si no puede resolver el problema, es posible que el Departamento de Seguros de Texas (Texas Department of Insurance, por su nombre en inglés) pueda ayudar.

Aun si usted presenta una queja ante el Departamento de Seguros de Texas, también debe presentar una queja a través del proceso de quejas o de apelaciones de su compañía de seguros. Si no lo hace, podría perder su derecho para apelar.

00 ML0042 44 12 19                                                    Page 1 of 2

**Arch Insurance Group**
Para obtener información o para presentar una queja ante su compañía de seguros:

**Llame a: 1-866-413-5550**
**Teléfono gratuito: 1-866-413-5550**
Correo electrónico:
**consumercomplaints@archcapservices.com** Dirección postal:
**Harborside 3**
**210 Hudson Street, Suite 300**
**Jersey City, NJ  07311-1107**

**El Departamento de Seguros de Texas**
Para obtener ayuda con una pregunta relacionada con los seguros o para presentar una queja ante el estado:
Llame con sus preguntas al: 1-800-252-3439
Presente una queja en: www.tdi.texas.gov
Correo electrónico: ConsumerProtection@tdi.texas.gov
Dirección postal: MC 111-1A, P.O. Box 149091, Austin, TX 78714-9091

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT

It is agreed that:

1. In the event of the failure of the **Insurer** to pay any amount claimed to be due hereunder, the **Insurer**, at the request of the **Insured**, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction.  All matters arising under this Policy shall be determined in accordance with the law and practice of such Court, provided that nothing shall prohibit the **Insurer** from removing any action, suit or proceeding to a United States District Court.  The **Insurer** shall abide by the final decision of such court or any appellate court in the event of an appeal.

2. Service of process in the above described action, suit or proceeding may be made upon: General Counsel, Arch Insurance Group Inc., 300 Plaza Three, Jersey City, NJ 07311-1107.  Upon the request of the **Insured**, such General Counsel shall give a written undertaking to enter an appearance on behalf of the **Insurer** in the event that such an action, suit or proceeding shall be instituted.

3. Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the **Insurer** hereby designates the Superintendent, Commissioner, or Director of Insurance or other officer specified in such statute as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted against the **Insurer** upon this Policy.  The Superintendent, Commissioner or Director of Insurance or other officer is hereby authorized and directed to accept service of process on behalf of the **Insurer** in any such action, suit or proceeding and to mail a copy of such process to the above mentioned General Counsel.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 1

Policy Number: SPL0066403-01

Named Insured: LPC Multifamily Holdco, LLC

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 4/1/2022

00 ML0003 00 04 12                                                                                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**REAL ESTATE DEVELOPMENT SERVICES**

It is agreed that:

**I.**      Section 3. DEFINITIONS, X. **"Real Estate Development Services"** is deleted and replaced by the following**:**

**X.**      **"Real Estate Development Services"** means Property Management, Asset Management, Construction Management, Development Management, Real Estate Brokerage, Sales and Leasing Services, Real Estate Advisory Services, Facilities Management and Interior Design performed by the **Insured** for others for a fee or for owned properties without a fee and any other services described by endorsement (if applicable).

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 2

Policy Number: SPL0066403-01

Named Insured: LPC Multifamily Holdco, LLC

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 4/1/2022

00 MPX0639 00 04 21                                                                                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMEND INSURED VS INSURED-EXCLUSION PRO-RATA PAYMENTS**

It is agreed that Section **6. EXCLUSIONS**, paragraph G is deleted and replaced with the following:

**G.** in connection with any **Claim** by or on behalf of any **Insured** or **Affiliate** against any **Insured**. Provided, however, the **Insurer** shall pay an allocated percentage of **Loss** for otherwise covered **Claims** by an **Affiliate** owned more than 50% by an **Insured Organization.** The percentage of **Loss** for any such **Claim** covered by the **Insurer** shall be equal to the percentage of such entity not owned by such **Insured Organization** and is part of and not in addition to the Aggregate Limit of Liability Each Policy Period, specified in Item 6.B of the Declarations.

For purposes of this endorsement, **"Affiliate"** means any person or entity:

a) which wholly or partly owns, operates, controls or manages an **Insured Organization**;
b) which is operated, controlled or managed by an **Insured**; or
c) in which any **Insured** has an ownership interest;

at any time during or after the performance of **Professional Services** giving rise to the **Claim**: or any entity for which any natural person **Insured** is a director, officer, trustee, regent, governor, independent contractor or equivalent executive at the time the **Claim** is made.

**Affiliate** does not include a **Subsidiary**.

Endorsement Number: 3

Policy Number: SPL0066403-01

Named Insured: LPC Multifamily Holdco, LLC

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 4/1/2022

All other terms and conditions of this Policy remain unchanged.

00 MPL0199 00 11 18

329

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMEND INSURED DEFINITION**

It is agreed that Section **3. DEFINITIONS, H. "Insured"** is amended to include the following:

4.　　　any entity affiliated with an **Insured Organization**, but solely while performing **Real Estate Development Services** on behalf of the **Insured Organization**

5.　　　John Timothy Byrne, Blair Mathew Pogue, David Brent Pogue, Jeffery Blake Pogue, Mack Pogue (individual or as a trustee), Delores Jean McMullan Pogue (individual or as a trustee), but solely while performing **Real Estate Development Services** on behalf of the **Insured Organization**.

6.　　　Lincoln Property Company; CF Multifamily US LLC; but solely while performing **Real Estate Development Services** on behalf of the **Insured Organization**.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 4

Policy Number: SPL0066403-01

Named Insured: LPC Multifamily Holdco, LLC

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 4/1/2022

00 MPX0636 00 04 21

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ADD INSURED ENDORSEMENT**

It is agreed that Section **3, DEFINITIONS, H. Insured** is amended to add:

LPC Multifamily Holdco Member I LLC  (DE)

Lincoln BP Management Holdings, Inc. (S-Corp) (DE)

LPC Contractors of Texas, Inc. (Q Sub) (TX)

LPC Contractors of Oakbrook, Inc. (Q Sub) (IL)

Lincoln BP Management Holdings, Inc. (S-Corp) (DE)

LPC Multifamily Holdco Member II LLC (DE)

Lincoln Property Company National, Inc. (Q Sub) (DE)

LPC Contractors of Southeast, Inc. (Q Sub) (GA)

LPC Contractors of Northeast, Inc. (Q Sub) (VA)

LPC Developers of Texas, Inc. (Q Sub) (TX)

LPC Contractors of West, Inc. (Q Sub) (DE)

LPC Parent Corp, Inc. (S-Corp) (DE)

Lincoln Property Company

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 5

Policy Number: SPL0066403-01

Named Insured: LPC Multifamily Holdco, LLC

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 4/1/2022

00 MPL0152 00 03 17                                                                                           Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ADD INSURED FOR VICARIOUS LIABILITY ONLY**

It is agreed that:

1.  Section **3. DEFINITIONS H. "Insured"** is amended to include the below named entities, but solely for **Claims** arising out of a **Wrongful Act** of an **Insured Organization**.

2.  This Policy does not apply to any **Claim** alleging, based upon, arising out of, or resulting from, directly or indirectly out of any act, error, omission, misstatement, misleading statement, breach of duty or neglect by the below named entities or any of its employees or representatives.



| Entities that have an ownership interest in real estate properties managed or developed by an **Insured**, but only applicable to entities who are not otherwise an **Insured(s)**. |
| --- |
|  |
|  |

3.  Solely for the purpose of determining the application of Section **6. EXCLUSIONS G.** the entities listed above shall not be considered an **Insured(s)**.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 6

Policy Number: SPL0066403-01

Named Insured: LPC Multifamily Holdco, LLC

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 4/1/2022

00 MPX0388 00 08 18                                                                        Page 1 of 1

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## AMEND DEFINITION OF CLAIM MANAGER

It is agreed that Section 3, DEFINITIONS, D. **Claim Manager** of the Policy is deleted and replaced with the following:

**"Claim Manager"** means any natural person designated with an X below:

☐    chief executive officer;

☐    chief operating officer;

☐    chief financial officer;

☒    general counsel;

☐    chief compliance officer;

☒    risk manager;

of an **Insured Organization**.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 7

Policy Number: SPL0066403-01

Named Insured: LPC Multifamily Holdco, LLC

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 4/1/2022

00 MPL0169 00 02 18                                 Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**JOINT VENTURE AS INSURED**

It is agreed that any **Joint Venture(s)** the **Named Insured** or a **Subsidiary** has ownership in is/are an **Insured**, but only with respect to any amount the **Named Insured or Subsidiary** is/are legally obligated to pay for **Loss,** including related **Defense Costs**, due to their ownership percentage in such **Joint Venture**.

For purposes of this endorsement, **"Joint Venture"** means any legal entity, joint venture or limited liability company in which the **Named Insured** or **Subsidiary** has less than a 100% legal or beneficial interest.


All other terms and conditions of this Policy remain unchanged.


Endorsement Number: 8

Policy Number: SPL0066403-01

Named Insured: LPC Multifamily Holdco, LLC

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 4/1/2022


00 MPX0637 00 04 21                                                              Page 1 of 1

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## FEE DISPUTE EXCLUSION

It is agreed the **Insurer** shall not pay **Loss** in connection with any **Claim**:

1. based upon, arising from, or in any way related to any fees, charges or commission disputes or the return of fees, charges or commissions.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 9

Policy Number: SPL0066403-01

Named Insured: LPC Multifamily Holdco, LLC

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 4/1/2022

00 MPX0638 00 04 21

335

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## COMMERCIAL PROPERTY EXCLUSION

It is agreed the **Insurer** shall not pay **Loss** in connection with any **Claim**:

1. made against any **Insured** alleging, arising out of, based upon or attributable to any commercial property management or commercial property development services provided by Lincoln Property Company, an **Insured** or any **Subsidiary.**

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 10

Policy Number: SPL0066403-01

Named Insured: LPC Multifamily Holdco, LLC

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 4/1/2022

00 MPX0640 00 04 21

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMEND CLAIM DEFINITION ENDORSEMENT AND DISCIPLINARY PROCEEDING COVERAGE**

1.  It is agreed that Section 3. DEFINITIONS **C. "Claim"** is deleted and replaced by the following:

   **C.**  **"Claim"** means any:

   1.  written demand for monetary damages or non-monetary relief commenced by the receipt by any **Insured** of such demand;

   2.  civil proceeding against any **Insured** for monetary or non-monetary relief commenced by the receipt by, or the service upon, any **Insured** of a complaint or similar pleading;

   3.  written request to an **Insured** to toll or waive a period or statute of limitations regarding a potential **Claim** as described in 1 or 2 above commenced by the receipt by such **Insured** of such request;

   All **Claims** arising out of the same **Wrongful Act** or any **Interrelated Wrongful Acts** shall be deemed to be a single **Claim** first made on the earliest date that:

   **1.**  any of such **Claims** was commenced, even if such date is before the **Policy Period**;

   **2.**  notice of such **Wrongful Act** or any **Interrelated Wrongful Act** was given to the **Insurer** pursuant to Section 9.B.; or

   **3.**  notice of any fact, circumstance, or situation including such **Wrongful Act** or any **Interrelated Wrongful Act** was given under any prior policy of which this Policy is a renewal or replacement.

   No coverage is provided for any **Claim** made, or deemed first made, before the **Policy Period**.

2.  A.  If during the **Policy Period**, the **Insured** is subject to a proceeding by a regulatory or disciplinary official, board or agency to investigate charges of professional misconduct by an **Insured** in the performance of **Professional Services** the **Insurer** will, at the written request of the **Insured** pay **Loss** attributable to such proceeding.  Coverage for any disciplinary proceedings is subject to a sub-limit of $25,000 which shall be a part of and not in addition to the annual aggregate limit of liability and no Retention shall apply.

   B.  The **Claim Manager** must give the **Insurer** notice of such disciplinary proceeding as soon as practicable after any **Claim Manager** becomes aware of such disciplinary proceeding, but in no event later than: (i) 60 days after the end of the **Policy Period**; or (ii) the end of the Extended Reporting Period, if applicable.  Any notice the **Claim Manager** gives the **Insurer** of a disciplinary proceeding shall be deemed notification of an alleged negligent act, error or omission which might result in a **Claim** under Section **9. CLAIMS AND POTENTIAL CLAIMS NOTICES** in the Policy.

3.  It is also agreed that if the definitions or amendments in this endorsement conflict with any other endorsement on the Policy then the definitions and amendments in this endorsement will apply.

All other terms and conditions of this Policy remain unchanged.

00 MPX0645 00 05 21                                                                     Page 1 of 2

337

Endorsement Number: 11

Policy Number: SPL0066403-01

Named Insured: LPC Multifamily Holdco, LLC

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 4/1/2022

00 MPX0645 00 05 21                                                                                    Page 2 of 2

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**LOCK BOX ENDORSEMENT**

It is agreed that Section **3, DEFINITIONS**, is amended to add the following:

BB.    **"Lock Box Claim"** means a **Claim** resulting from damage or destruction of tangible property resulting from **Real Estate Development Services** performed by the **Insured**, and in the distribution, maintenance, operation or use of a lock box at any property owned, occupied, listed by or under control of an **Insured**.

Coverage for any **Lock Box Claim** is subject to a sublimit of liability of $250,000, which shall be part of and not in addition to the annual aggregate limit of liability.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 12

Policy Number: SPL0066403-01

Named Insured: LPC Multifamily Holdco, LLC

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 4/1/2022

00 MPX0643 00 05 21

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**REQUIRED EMPLOYMENT PRACTICES LIABILITY AND THIRD PARTY DISCRIMINATION COVERAGE**

As a condition precedent for coverage for any **Loss** or **Claim** based upon, arising from or in any way related to discrimination, the **Named Insured** agrees and warrants that employment practices liability insurance, including third party discrimination, covering discrimination, shall be kept in force during the **Policy Period**.  The amount of coverage shall be no less than $1,000,000.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 13

Policy Number: SPL0066403-01

Named Insured: LPC Multifamily Holdco, LLC

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 4/1/2022

00 MPX0743 00 06 22                                                      Page 1 of 1

340