IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLOW BRIDGE PROPERTY COMPANY LLC, | § § § | |
| *Plaintiff,* | § § § | Civil Action No. 3:24-cv-00029-D |
| v. | § § | |
| ARCH SPECIALTY INSURANCE COMPANY, | § § § § | |
| *Defendant.* | § | |

BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ...................................................... 3

    The Antitrust Suits ............................................................................................................ 3

    LPC's Real Estate Developer Professional Liability Insurance Policy ......................... 7

    Arch's Denial of Coverage .............................................................................................. 5

LEGAL STANDARD ............................................................................................................ 5

ARGUMENT AND AUTHORITIES .................................................................................... 6

    I.    ARCH'S DUTY TO DEFEND IS DECIDED BY COMPARING THE UNDERLYING PLEADINGS AND THE POLICY, BOTH LIBERALLY CONSTRUED IN FAVOR OF COVERAGE ................................................ 6

    II.   ARCH'S "EXCLUSION X" IS NOT AN ANTITRUST EXCLUSION ........ 7

        a.   The Insurance Industry Knows How To Exclude Antitrust Coverage, And Has Been Doing So For Decades .................................................................. 7

        b.   Courts Have Enforced These Antitrust Exclusions Either Because Of Their Plain Language, Or Because Of Surrounding Words And Phrases .............. 8

    III.  AS HAS BEEN ARGUED BY THE INSURANCE INDUSTRY ITSELF, "EXCLUSION X" APPLIES INSTEAD TO CONSUMER PROTECTION ACT CLAIMS, NOT SHERMAN ACT VIOLATIONS ............................. 10

CONCLUSION ..................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Big Bridge Holdings, Inc. v. Twin City Fire Ins. Co.*, 132 F.Supp.3d 982 (N.D. Ill. 2015) .......... 12

*Carolina Casualty Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, (N.D. Tex. 2009) ............................... 6

*Continental Casualty Co. v. MultiService Corp.*, No. 06-2256, 2009 WL 1788422 (D. Kan. June 23, 2009) ........................................................................................................................ 8

*Glover v. National Insurance Underwriters*, 545 S.W.2d 755 (Tex. 1977) .................................... 7

*Gore Design Completions, Ltd. v. Hartford Fire Insurance Co.*, 538 F.3d 365 (5th Cir. 2008) ..... 6

*GuideOne Elite Insurance Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305 (Tex. 2006)) .... 6

*Integra Telecom, Inc. v. Twin City Fire Insurance Co.*, No. 08-906, 2010 WL 1753210 (D. Or. Apr. 29, 2010) ............................................................................................................... 7, 8, 11

*James River Insurance Co. v. Rawlings Sporting Goods Company, Inc.*, No. 19-6658, 2021 WL 346418 (C.D. Cal. 2021) ................................................................................................... 8, 11

*Liberty Mutual Insurance Co. v. Graham*, 473 F.3d 596 (5th Cir. 2006) ....................................... 6

*Live Nation, Inc. v. Illinois National Insurance Co.*, No. 0702721, 2007 WL 9725132 (C.D. Cal. Sept. 28, 2007) .................................................................................................................... 10

*Major League Soccer, L.L.C. v. Federal Insurance Co.*, 45 Misc. 3d 1211(A) (N.Y. Sup. May 20, 2014) ..................................................................................................................................... 8

*Saint Consulting Group, Inc. v. Endurance American Specialty Insurance Co.*, No. 11-11279, 2012 WL 1098429 (D. Mass. Mar. 30, 2012) ..................................................................... 8, 9

*U.S. Fidilety & Guarantee Co. v. Goudeau*, 272 S.W.3d 603 (Tex. 2008) ..................................... 8

*Weaver v. Metropolitan Life Insurance Co.*, 287 F. Supp. 3d 645 (N.D. Tex. 2017) ...................... 5

**Federal Statutes**

Fed. R. Civ. P. 56(a) ....................................................................................................................... 9

**State Statutes**

Tex. R. Evid. 201 ......................................................................................................................... 18

COMES NOW Plaintiff Willow Bridge Property Company LLC (formerly LPC Multifamily Holdco LLC d/b/a Lincoln Property Company) ("LPC") and files this Brief in Support of Motion for Partial Summary Judgment and respectfully states as follows:

## INTRODUCTION

This coverage litigation between a policyholder and its insurer turns on a single question of law: whether a policy exclusion for "unfair trade practices or violation of consumer protection laws" excludes coverage for alleged antitrust violations. Defendant Arch Specialty Insurance Company cannot meet its heavy burden to show that this terse and undefined phrase, narrowly construed in favor of coverage, clearly and unambiguously operates as a so-called "antitrust exclusion," and this Court should enter judgment as a matter of law that Arch owes its insured a duty to defend against antitrust lawsuits now pending.

LPC, a real estate management company that provides multifamily property management services throughout the United States, seeks coverage for thirty-five putative class action lawsuits (now consolidated in a multi-district litigation for pre-trial proceedings) alleging violation of federal and state antitrust laws. The lawsuits allege that LPC and its competitors improperly used revenue management software that allegedly took sensitive pricing and supply data, applied an algorithm across that data, and generated pricing recommendations for rental units available in various housing markets. LPC has been forced to defend against these allegations without the benefit of the insurance defense coverage that it purchased for this type of litigation risk.

Arch has denied coverage in full, asserting that "Exclusion X" in its policy, which excludes coverage for "unfair trade practices or violation of consumer protection laws," is a so-called "antitrust exclusion" that bars coverage.

1

LPC moves this court for a ruling that the phrase "unfair trade practices or violation of consumer protection laws" does not exclude defense coverage for alleged antitrust violations, for two reasons: *First,* the insurance industry has been excluding coverage for antitrust suits for decades, and has done so using far more specific language. If Arch intended to exclude coverage for antitrust lawsuits, it was incumbent on Arch to use plain, clear policy language in keeping with decades of policy underwriting and case law precedent. *Second*, insurance companies have themselves argued numerous times that the phrase "unfair trade practices" contained in more robust exclusions refers not to antitrust lawsuits, but to unfair or deceptive acts or practices prohibited by federal and state *consumer protection laws* (like the Federal Trade Commission Act ("FTC Act") or Uniform Deceptive Trade Practices Act ("UDTPA")). Courts have agreed, holding this interpretation to be reasonable.

Adding to this, the rules of contract interpretation favor LPC's pro-coverage interpretation of the phrase "unfair trade practices." Specifically, ambiguities and uncertainties in the policy are resolved against the insurer and in favor of the insured; grants of coverage are interpreted broadly to afford the greatest possible protection to the insured; exclusionary clauses are interpreted narrowly against the insurer; and the burden is on the insurer to prove that an otherwise covered claim is barred by a policy exclusion.

This pure question of law regarding Arch's duty to defend is perfectly suited for summary judgment because, under Texas law, Arch's duty to defend is determined by an "eight-corners" analysis, comparing just two documents – the underlying plaintiffs' pleadings and the insurance policy. LPC respectfully moves for partial summary judgment on its First Cause of Action for Breach of Contract, seeking a ruling from this Court that Arch breached its duty to defend LPC as a matter of law.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

*The Antitrust Suits*

1. LPC has been named as a defendant in thirty-five putative class action lawsuits filed in district courts across the country (the "Antitrust Suits"). ECF 31 (Stipulated Material Facts ("SMF")) ¶ 1.

2. The Antitrust Suits have now been consolidated for pre-trial proceedings as part of a multi-district litigation ("MDL") captioned *In re: RealPage, Inc., Rental Software Antitrust Litigation*, Case No. 3:23-md-03071, MDL No. 3071, in the United States District Court for the Middle District of Tennessee. SMF ¶ 2.

3. The operative pleading is the MDL Plaintiffs' Second Amended Consolidated Class Action Complaint ("SAC"). SMF ¶ 3 & ECF 31-1 (Exhibit A).

4. The SAC alleges that the MDL Defendants "engaged in a nationwide conspiracy to fix and inflate the price of multifamily rental housing across the country" by "conspir[ing] to limit supply and raise multifamily rental housing prices." SMF Ex. A ¶ 1. Specifically, the SAC alleges that "Defendants and their co-conspirators entered and engaged in a contract, combination or conspiracy to unreasonably restrain trade in violation of Section 1 of the Sherman Act" by entering into an agreement "to fix, raise, stabilize, or maintain at artificially high levels the rents they charge for residential units in Metro Areas nationwide[.]" SMF Ex. A ¶¶ 702 - 703.

5. The SAC asserts two counts: Count I – Price Fixing in Violation of Section 1 of the Sherman Act (15 U.S.C. § 1), and Count II – Violation of State Antitrust Statutes (in 42 states and the District of Columbia). SMF Ex. A ¶¶ 701 - 757.

*LPC's Real Estate Developer Professional Liability Insurance Policy*

6. LPC purchased from Arch a "Real Estate Developer Professional Liability Insurance Policy" for the policy period April 1, 2022 to April 1, 2023, with a retroactive date of October 1, 1991 (the "Policy"). SMF ¶ 4, ECF 31-2 (Exhibit B) at p. 303.[1]

7. The Policy provides a $5 million limit of liability per claim and in the aggregate, subject to a $50,000 retention. SMF ¶ 5, Ex. B at p. 303 (Declarations, Item 6).

8. The Policy imposes on Arch a duty to defend LPC against claims made, "even if such Claim is groundless, false or fraudulent." SMF ¶ 6, Ex. B at p. 316 (§ 8(A)).

9. Defense costs are "part of, and not in addition to" the limit of liability and include "reasonable and necessary fees and expenses incurred in the defense or appeal of a Claim." SMF ¶ 7, Ex. B at p. 309 (§ 3(F), Definition of Defense Costs) & p. 316 (§ 7(C)).

10. Arch promised to pay for "Loss. . . resulting from a Claim first made. . . during the Policy Period. . . for a Wrongful Act committed on or subsequent to the Retroactive Date." SMF ¶ 8, Ex. B at p. 307 (Insuring Agreement § 1(A)).

11. "Loss" includes "Defense Costs." SMF ¶ 9, Ex. B at p. 309 (§ 3(L), Definition of Loss).

12. "Wrongful Act" is broadly defined to mean "any actual or alleged negligent act, error or omission, misstatement, misleading statement, breach of duty or neglect . . . solely in the performance of or failure to perform Real Estate Development Services." SMF ¶ 10, Ex. B at p. 312 (§ 3(AA), Definition of Wrongful Act).

---

[1] Capitalized terms not otherwise herein defined are defined terms in the Policy.

13. The Policy's Exclusion X—which excludes for Loss "in connection with any Claim for, based upon, arising from or in any way related to unfair trade practices or violation of consumer protection laws"—is the sole basis of Arch's denial of coverage. ECF 24 (Answer) ¶ 37 (admitting that "Arch has denied coverage for the Antitrust Suits *premised solely* on 'Exclusion X' in the Policy[.]") (emphasis added), Ex. B at p. 315 (§ 6(X)).

*Arch's Denial of Coverage*

14. LPC provided Arch with timely notice of the Antitrust Suits, beginning with the *Bason v. RealPage, Inc. et al.* class action complaint filed October 18, 2022 in the Southern District of California. SMF ¶ 12.

15. Arch has denied coverage for all of the Antitrust Suits. SMF ¶¶ 13.

16. There is no dispute between the parties that (a) the alleged Wrongful Acts relate to the Insured's "Real Estate Development Services" and (b) the lawsuits share a common nexus of facts, events, causes, etcetera, and therefore constitute a single Claim. SMF ¶¶ 14-15.

17. The parties agree that Arch's duty to defend the Antitrust Suits turns on the interpretation and applicability of Exclusion X. SMF ¶ 16.[2]

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Summary judgment is particularly appropriate in cases where the language of a contract is unambiguous and only the interpretation of the contract in light of state substantive law is in dispute." *Weaver v. Met. Life Ins. Co.*, 287 F. Supp. 3d 645,

---

[2] There also is no dispute that the only other exclusions that Arch cites as defenses to coverage – Exclusions A and Exclusion B – do not apply to Defense Costs, and therefore are not relevant to determining Arch's duty to defend. SMF ¶ 17.

5

649 (N.D. Tex. 2017) (citation omitted). Moreover, the parties have stipulated to the facts material to this Motion, and to the authenticity and admissibility of the operative pleadings, insurance contract, and relevant correspondence on which the parties rely.

## ARGUMENT AND AUTHORITIES

I. **ARCH'S DUTY TO DEFEND IS DECIDED BY COMPARING THE UNDERLYING PLEADINGS AND THE POLICY, BOTH LIBERALLY CONSTRUED IN FAVOR OF COVERAGE**

In determining whether an insurer has a duty to defend, "Texas follows the 'eight corners' rule, under which the court looks only to the third-party plaintiff's pleadings and the provisions of the insurance policy[.]" *Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 922-23 (N.D. Tex. 2009) (Fitzwater, J.) ("*Sowell*") (citing *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006)). "Neither facts outside the pleadings nor the truth or falsity of the allegations should be considered, and the allegations against the insured should be 'liberally construed in favor of coverage.'" *Sowell*, 603 F. Supp. 2d at 923 (citing *GuideOne*, 197 S.W.3d at 308)). All doubts regarding the duty to defend must be resolved in favor of coverage. *Sowell*, 603 F. Supp. 2d at 923 (citing *Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 600 (5th Cir. 2006)). Or as the Fifth Circuit has previously summed it up: "**When in doubt, defend**." *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008) (emphasis added).

Arch's duty to defend the Antitrust Suits turns on the interpretation and applicability of Exclusion X. Under Texas law, Arch as the insurer "bears the burden of establishing that 'the plain language of a policy exclusion or limitation allows the insurer to avoid coverage,'" with exclusions "narrowly construed, and all reasonable inferences [] drawn in the insured's favor." *Id.* 603 F. Supp. 2d at 923 (citing *Gore*, 538 F.3d at 370). If a policy exclusion is found to be ambiguous, meaning that the exclusion "is susceptible to more than one reasonable

6

interpretation," "the court must adopt the interpretation urged by the insured as long as it is reasonable." *Id.* (citations omitted); *see also Glover v. Nat'l Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977) (courts "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, *even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.*") (emphasis added).

## II. ARCH'S "EXCLUSION X" IS NOT AN ANTITRUST EXCLUSION

### a. The Insurance Industry Knows How To Exclude Antitrust Coverage, And Has Been Doing So For Decades

The insurance industry has been inserting so-called "Antitrust Exclusions" into their insurance policies for decades, and have done so using far more explicit and clear policy language than the language in Arch's policy. Arch's so-called "antitrust exclusion" contrasts sharply with battle-tested antitrust exclusions that either (a) list the federal antitrust statutes by name and then expand to encompass any similar federal, state or local statutes or common law; (b) enumerate half a dozen anticompetitive behaviors expressly; or (c) as belt and suspenders, do some combination of the two. Whereas the Arch policy excludes "unfair trade practices or violation of consumer protection laws," other errors and omissions ("E&O") policies, and their close analogues, directors and officers ("D&O") policies, contain the following robust exclusions:

- A 2004 D&O policy excluding "price fixing, restraint to trade, monopolization, unfair trade practices or any violation of the Federal Trade Commission Act, Sherman Anti-trust Act, Clayton Act, or any similar law regulating antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities."[3]

---

[3] *Integra Telecom, Inc. v. Twin City Fire Ins. Co.*, No. 08-906, 2010 WL 1753210, at *1 (D. Or. Apr. 29, 2010).

7

- A 2005 D&O policy excluding "price fixing, restraint of trade, monopolization, unfair trade practices or any actual or alleged violation of the Federal Trade Commission Act, the Sherman Anti–Trust Act, the Clayton Act, or any other federal statutory provision involving anti-trust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, and any amendments thereto or any rules or regulations promulgated thereunder or in connection with such statutes; or any similar provision of any federal state, or local statutory law or common law anywhere in the world."[4]

- A 2008 E&O policy excluding "price fixing, restraint of trade, monopolization or unfair trade practices including actual or alleged violations of the Sherman Anti–Trust Act, the Clayton Act, or any similar provision or any state, federal or local statutory law or common law anywhere in the world."[5]

Even on its face, Arch's contention that it can exclude in seven words—"unfair trade practices or violation of consumer protection laws"—that which its insurance company brethren require paragraphs to exclude, cannot be correct.

b. **Courts Have Enforced These Antitrust Exclusions Either Because Of Their Plain Language, Or Because Of Surrounding Words And Phrases**

Insurers that prevail in court regarding the applicability of their antirust exclusions have done so because (a) the policies expressly exclude "the Sherman Antitrust Act," or (b) because of the principle of *noscitur a sociis*, "a canon of statutory and contract construction that instructs 'the meaning of an unclear word or phrase should be determined by the words immediately surrounding it." *See, e.g.*, *Integra Telecom, Inc. v. Twin City Fire Ins. Co.*, No. 08-906, 2010 WL 1753210, at *4 (D. Or. Apr. 29, 2010); *see also James River Insurance Co. v. Rawlings Sporting Goods Company, Inc.*, No. 19-6658, 2021 WL 346418, at *4 (C.D. Cal. 2021) ("*Rawlings*") (citation omitted) ("A word takes meaning from the company it keeps."); *U.S. Fid. & Guar. Co.*

---

[4] *Major League Soccer, L.L.C. v. Fed. Ins. Co.*, 45 Misc. 3d 1211(A), at *1 (N.Y. Sup. May 20, 2014); *see also Continental Casualty Co. v. MultiService Corp.*, No. 06-2256, 2009 WL 1788422 (D. Kan. June 23, 2009) (2004 D&O coverage, adding materially identical antitrust exclusion by endorsement).

[5] *Saint Consulting Grp., Inc. v. Endurance Am. Specialty Ins. Co.*, No. 11-11279, 2012 WL 1098429, at *1 (D. Mass. Mar. 30, 2012).

*v. Goudeau*, 272 S.W.3d 603, 606 (Tex. 2008) (applying this canon of construction). Arch, with its heavy burden of proving the applicability of an exclusion narrowly construed, cannot show that its seven-word exclusion for "unfair trade practices or violation of consumer protection laws" plainly and unambiguously excludes coverage for alleged Sherman Act violations.

In *Saint Consulting*, 2012 WL 1098429, at *1-2, a policyholder sought defense coverage under an E&O policy for a lawsuit alleging, in relevant part, violations of "the Sherman Antitrust Act, the Illinois Antitrust Act, and claims for tortuous [sic] interference with prospective economic advantage, common law fraud, abuse of process, and conspiracy." The insurance company denied coverage, citing in relevant part the policy's exclusion for "any Claim based upon or arising out of any actual or alleged price fixing, restraint of trade, monopolization or unfair trade practices including actual or alleged violations of the Sherman Anti–Trust Act, the Clayton Act, or any similar provision or any state, federal or local statutory law or common law anywhere in the world." *Id.* at *1. The court held that the claims of Sherman Act and Illinois Antitrust Act violations "obviously fall within" the exclusion, which (as excerpted by the Court) "exempts from coverage claims 'arising out of ... actual or alleged violations of the Sherman Anti–Trust Act, the Clayton Act, or any similar provision or [sic] any state, federal or local law.'" *Id.* at *3 (alteration in original). Thus notably, the court omitted the phrase "unfair trade practices" in its recitation of the operative exclusionary language. In other words, the federal and state antitrust claims were excluded by the E&O policy's express exclusions for the Sherman Anti-Trust Act, the Clayton Act, etcetera. The court further held that the remaining claims in the underlying lawsuit, characterized as "state common law claims for business interference," also were excluded from coverage because of "the range of anti-competitive conduct" listed in the exclusion. As the court reasoned, the exclusion "is quite broad, ***covering not just antitrust violations, but also 'price fixing, restraint of trade, monopolization or unfair trade practices***.'

9

This ***range*** of anti-competitive conduct suggests the broad scope of the exclusion." *Id.* at *3 (emphasis added). Thus, the court distinguished between antitrust violations, on the one hand, and "unfair trade practices," on the other.

In *Live Nation, Inc. v. Illinois National Insurance Co.*, No. 0702721, 2007 WL 9725132, at *2 (C.D. Cal. Sept. 28, 2007), also involving an E&O policy, an insurer prevailed on a motion to dismiss. The policyholder filed a declaratory judgment action seeking coverage for twenty-two underlying class action lawsuits alleging "anticompetitive and predatory practices." The E&O policy contained an exclusion for claims "arising out of antitrust violations, restraint of trade, or unfair competition, or violations of the Sherman Act, the Clayton Act or the Robinson-Patman Act[.]" Noting that "[t]he insurer is responsible for phrasing exclusions and exceptions thereto in clear and unmistakable language," the court held that "[t]he plain meaning of the exclusion at issue here is not difficult to discern. Claims arising out of Sherman Act violations are not covered." *Id.* at *10. Arch opted not to use the "plain language"—which did not even include the phrase "unfair trade practices"—enforced by the *Live Nation* court.

**III.    AS HAS BEEN ARGUED BY THE INSURANCE INDUSTRY ITSELF, "EXCLUSION X" APPLIES INSTEAD TO CONSUMER PROTECTION ACT CLAIMS, NOT SHERMAN ACT VIOLATIONS**

Arch's insurance company brethren have made the very argument that the policyholder, LPC, makes here: that the phrase "unfair trade practices" in express and robust antitrust exclusions (*unlike* Arch's) should be read to refer not to antitrust violations, but rather to unfair and deceptive trade practices. In these cases, courts find that the insurer's interpretation of the phrase is at least "reasonable," but so too is the policyholder's reading, and the ensuing ambiguity must be construed against the insurer and in favor of the insured. The ambiguity is even sharper in the context of Arch's exclusion, and that ambiguity must be construed in favor of LPC, the insured.

In *Integra*, a policyholder prevailed on cross-motions for summary judgment regarding coverage under a D&O policy for a class action lawsuit alleging "unfair and deceptive business practices" and a violation of Washington's Consumer Protection Act. 2010 WL 1753210, at *1. The policy excluded claims "based upon, arising from, or in any way related to price fixing, restraint of trade, monopolization, *unfair trade practices* or any violation of the Federal Trade Commission Act, Sherman Antitrust Act, Clayton Act, or any similar law regulating antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities." *Id.* at *1 (emphasis in original). The insurer argued that the specific phrase "unfair trade practices" referred not to antitrust violations (i.e., "the insured's relationship with its business rivals"), but to "unfair and deceptive business practices" (i.e., the insured's relationship with its customers), and therefore excluded coverage for the CPA suit. *Id.* at * 5. The court held that,

> While defendant's argument that "unfair trade practices" should be read broadly to include the claims against plaintiffs in the underlying lawsuit is reasonable, plaintiffs' interpretation is also reasonable. After scrutinizing the term in the context of its surrounding terms and in the context of the Policy as a whole, I conclude the term is ambiguous and that plaintiffs' interpretation is reasonable. Therefore, under Oregon law the term will be construed in favor of the insured plaintiffs.

*Id.* at *6. Applied to the Arch policy, LPC's reading of the exclusionary phrase "unfair trade practices or violation of consumer protection laws" as a consumer protection exclusion, *not* an antitrust exclusion, is reasonable, and LPC's reasonable construction must prevail as a matter of law.

In *Rawlings*, 2021 WL 346418, at *1, a policyholder sought coverage under a D&O policy for a class action lawsuit alleging violation of California's Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act. The insurance company denied coverage for the underlying litigation, "arguing that it fell under the policy's 'Anti-trust Exclusion.'" *Id.* at * 2. The so-named "Anti-trust Exclusion" excluded loss "in connection with any Claim alleging, arising out of, based upon or attributable to any violation of any law, whether statutory,

11

regulatory or common, as respects any of the following: anti-trust, business competition, *unfair trade practices* or tortious interference in another's business or contractual relationships." *Id.* at *4 (emphasis added).

As the court explained, "[t]he question is whether the consumer protection claims in the [Underlying] Action are '[c]laim[s] alleging, arising out of, based upon or attributable to any violation of law … as respects … *unfair trade practices*." *Id.* at *4 (alterations and emphasis in original). This question was not made simpler by the exclusion's broad preamble, excluding "'any' loss 'arising out of' the excluded categories of conduct" because, as the court explained, "the fact that an exclusion applies to 'any claims arising out of XYZ' does not help with figuring out what XYZ means in the first place." *Id.* at *5 (citing *Big Bridge Holdings, Inc. v. Twin City Fire Ins. Co.*, 132 F.Supp.3d 982, 987 (N.D. Ill. 2015) (acknowledging the "broadly worded prefatory language in the exception, which incorporates *any* claim *based upon, arising from, or in any way related to any actual or alleged* unfair trade practices" but finding that "it does not help to define 'unfair trade practices'") (emphasis in original).

The insurer argued that "unfair trade practices" had "a consumer protection component." *Id.* at *5. Though the court viewed the issue as "admittedly a close one," "in the insured-friendly state of California, 'any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer[.]'" *Id* (citation omitted). The court granted summary judgment in favor of the insured. *Id.* at *8.

Similarly, in *Big Bridge Holdings*, 132 F. Supp. at 984-85, the insured sought coverage for eight underlying lawsuits all alleging CPA claims. The D&O policy excluded coverage for "price fixing, restraint of trade, monopolization, *unfair trade practices* or any violation of the Federal Trade Commission Act, Sherman Antitrust Act, Clayton Act, or any similar law regulating antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of

12

trade activities." *Id.* at 987 (emphasis added). The insurance company argued that the phrase "unfair trade practices" referred to consumer-protection claims. The court found "some appeal" to the insurer's argument, but ultimately ruled in favor of the insured. "[T]o resolve the issue, the Court need only find ambiguity in the language of the exclusion. Because 'unfair trade practices' is, at a minimum, ambiguous, the Court must follow Minnesota law, whereby any ambiguity is resolved in favor of the insured." *Id.* at 990 (citation and quotation omitted).

Lastly, the exclusion considered in a very recent coverage action involving one of LPC's co-defendants in the Antitrust Suits is highly instructive. In *Avenue5 Partners LLC, et al. v. Endurance America Specialty Insurance Co.*, No. 23-2-11110-9 SEA (Wash. Super. Ct.), Avenue5 Partners LLC sought coverage for these very Antitrust Suits under a 2022 professional liability policy that contained an "Unfair Business Practices and Antitrust" exclusion. The Endurance policy excluded coverage for:

> a. false, deceptive, or unfair business practices, *unfair trade practices*, or unfair competition. . .;
>
> b. violation of consumer protection laws; or
>
> c. price fixing, restraint of trade, monopolization, or any violation of the Federal Trade Commission Act, the Sherman Anti-Trust Act, the Clayton Act, each as amended, or any other federal, state, local, or foreign laws, regulations, or common law pertaining to antitrust, monopoly, price fixing, price discrimination, predatory pricing, or restraint of trade, or that otherwise protect competition[.]

*See* Appx. Ex. A at p. 91 (*Avenue5* Compl. Ex. 1, "Premier Professional Liability and Network Risk Insurance Policy," Unfair Business Practices and Antitrust Exclusion, also available through Westlaw, 2023 WL 10350716).[6] The insurer prevailed on summary judgment, arguing that "the

---

[6] Appendix Exhibits A through C are certified copies of the *Avenue5* court documents cited herein. *See* Appx. at pp. 105, 129, 137 (Certificates of King County Clerk, State of Washington). LPC respectfully requests that the Court take judicial notice of these court documents. *See* Tex. R. Evid. 201 (permitting court to "judicially notice a fact that is not subject to reasonable dispute because it: . . . (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.")

Underlying MDL Complaint is clearly about one thing: antitrust–a conspiracy to restrain trade by using RealPage software to fix rents for multifamily residential housing, in violation of the Sherman Anti-Trust Act and state law analogs," which is "precisely" the coverage that subparagraph (c) precludes: "The above paragraph [subparagraph (c)], appearing within the Unfair Business Practices and Antitrust exclusion, aptly summarizes the entirety of the Underlying MDL Complaint" and "[t]hus, all of the claims in the Underlying MDL Complaint are clearly excluded." *See* Appx. Ex. B at pp. 123-25 (Defendant's Motion for Summary Judgment, filed Oct. 20, 2023, also available through Westlaw, 2023 WL 10350710; Appx. Ex. C at pp. 130-36 (*Avenue5* Order Granting Defendant's for Summary Judgment and Denying Plaintiffs' Motion for Partial Summary Judgment, dated Feb. 24, 2024, also available through Westlaw, 2024 WL 921951).

    The phrase "unfair trade practices" *does not even appear* in subparagraph (c), and the *Avenue5* insurer did not argue, even in the alternative, that the exclusion for "unfair trade practices" in subparagraph (a) was relevant to determining coverage. This Court can reasonably deduce from the recent and relevant example of *Avenue5* that the phrase "unfair trade practices" in an insurance policy can and does refer to something other than antitrust litigation.

    The drafting history of antitrust exclusions is a matter of public record, as is the success carriers have had in court due to their drafting choices. It was incumbent on Arch to draft an antitrust exclusion that clearly and plainly excluded antitrust coverage, but Arch instead rested on the ambiguous and undefined phrase, "unfair trade practices," which even its own industry has argued, repeatedly, excludes CPA, not antitrust, claims. Against this backdrop of alternative, explicit, and successfully litigated anti-trust exclusions, Arch cannot meet its burden to prove that Exclusion X in its policy, narrowly construed and with ambiguities construed in favor of the insured, excludes coverage for the Antitrust Suits for which LPC seeks coverage.

## CONCLUSION

For the foregoing reasons, Plaintiff LPC respectfully requests that the Court grant Plaintiff's Motion for Partial Summary Judgment on its First Cause of Action for Breach of Contract, finding that Defendant Arch Specialty Insurance Company breached its duty to defend by denying coverage for the Antitrust Suits, and therefore owes LPC breach of contract damages, including all costs and expenses incurred by LPC to defend these suits, and all reasonable fees and costs incurred in bringing this coverage action.

Dated: August 30, 2024

Respectfully submitted,

*/s/ Julie Hammerman [8/30/2024]*
J Mark Chevallier (TX Bar No. 04189170)
**McGuire, Craddock & Strother, P.C.**
500 N. Akard Street, Suite 2200
Dallas, Texas 75201
Telephone: 214.954.6800
Facsimile: 214.954.6868
Email: mchevallier@mcslaw.com

Julie L. Hammerman (*Pro Hac Vice*)
**Thompson Hammerman Davis LLP**
1717 K St., NW, Suite 900
Washington, D.C. 20006
Telephone: 202.536.7529
Facsimile: 202.318.5356
E-Mail: jhammerman@thompsonhd.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

  I, Julie Hammerman, certify that on August 30, 2024, I served a true and correct copy of the foregoing document via electronic service on:

  Robert J. Witmeyer (TX Bar No. 24091174)
  rwitmeyer@mayerllp.com
  Summer L. Frederick (TX Bar No. 24067764)
  sfrederick@mayerllp.com
  Mayer LLP
  750 N. Saint Paul Street, Suite 700
  Dallas, Texas 75201
  Telephone: 214.379.6900
  Facsimile: 214.379.6939

  *Counsel for Defendant Arch Specialty Insurance Company*

              */s/ Julie Hammerman [8/30/2024]*
              Julie Hammerman