IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

WILLOW BRIDGE PROPERTY
COMPANY LLC,

§
§
§
§

*Plaintiff,*

§
§

Civil Action No. 3:24-cv-00029-D

v.

§

§

ARCH SPECIALTY INSURANCE
COMPANY,

§
§
§
§

*Defendant.*

---

## PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ ii

TABLE OF AUTHORITIES.............................................................................................. iii

INTRODUCTION ............................................................................................................. 1

UNDISPUTED MATERIAL FACTS ............................................................................... 2

ARGUMENT AND AUTHORITIES ................................................................................ 5

      I.      UNPROVEN ALLEGATIONS OF CONSPIRACY TO FIX PRICES
             EXPESSLY TRIGGER ARCH'S DUTY TO DEFEND........................................ 5

             a.      Arch Repeatedly Accepted That The Antitrust Suits Allege
                  "Wrongful Acts" ....................................................................................... 5

             b.      The Arch Policy Provides Defense Coverage For Alleged-But-
                  Unproven Intentional Conduct.................................................................. 6

      II.     NO COURT HAS APPLIED THE PHRASE "CONSUMER PROTECTION
             LAWS" TO EXCLUDE COVERAGE FOR ANTITRUST CLAIMS, WHILE
             MANY COURTS HAVE FOUND THE PHRASE "UNFAIR TRADE
             PRACTICES" TO BE AMBIGUOUS, AND CONSTRUED THE PHRASE IN
             FAVOR OF THE INSURED...........................................................................11

             a.      "Violation of Consumer Protection Laws" Refers to Consumer
                  Protection Claims.................................................................................... 12

             b.      Insurers Have Argued That The Phrase "Unfair Trade Practices" Also
                  Can Refer to Consumer Protection Claims............................................. 15

CONCLUSION..................................................................................................................... 18

TABLE OF AUTHORITIES

Cases

*Atl. Cas. Ins. Co. v. Taylormade Heat & Hair, LLC*, No. 3:19-cv-01618, 2020 WL 707801 (N.D. Tex. Feb. 11, 2020) ................................................................................................ 5

*Avenue5 Partners LLC, et al. v. Endurance Am. Specialty Ins. Co.*, No. 23-2-11110-9 (Wash. Super. Ct.) ............................................................................................................... 12

*Big Bridge Holdings, Inc. v. Twin City Fire Ins. Co.*, 132 F. Supp. 3d 982 (N.D. Ill. 2015) ........ 16

*Carolina Cas. Insurance Co. v. Sowell*, 603 F. Supp. 2d 914 (N.D. Tex. 2009) .......................... 14

*Cincinnati Specialty Underwriters Ins. Co. v. F&H Constr. Co., LLC*, No. 2:22-CV-00010, 2023 WL 2529557 (S.D. Tex. Jan. 25, 2023) ................................................................... 11

*Citizens Ins. Co. of Am. v. Panzica Bldg. Corp.*, 507 F. Supp. 3d 1047 (N.D. Ind. 2020) ........... 10

*Duzich v. Advantage Finance Corp.*, 395 F.3d 527 (5th Cir. 2004) ............................................. 7

*Evanston Insurance Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660 (Tex. 2008) ..... 11, 14

*Glover v. National Ins. Underwriters*, 545 S.W.2d 755 (Tex. 1977) ........................................... 11

*Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365 (5th Cir. 2008) ............. 14

*Integra Telecom, Inc. v. Twin City Fire Ins. Co.*, No. 08-906, 2010 WL 1753210 (D. Or. Apr. 29, 2010) ...................................................................................................................... 15

*James River Ins. Co. v. Rawlings Sporting Goods, Inc.*, No. 19-6658, 2021 WL 346418 (N.D. Cal. Jan. 25, 2021) ....................................................................................... 16, 17

*Nationwide Mut. Ins. Co. v. Choi*, 2023 WL 4747388 (S.D. Tex. July 25, 2023) ....................... 10

*Penn-Am. Insurance Co. v. Tarango Trucking, LLC*, 30 F.4th 440 (5th Cir. 2022) ...................... 9

*St. Consulting Group, Inc. v. Endurance America Specialty Ins. Co.*, No. 11-11279, 2012 WL 1098429 (D. Mass. Mar. 30, 2012) ........................................................................... 13

*Schnell v. State Farm Lloyds*, 98 F.4th 150 (5th Cir. 2024) ...................................................... 11

*WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568 (Tex. 1998) ........................................................ 7

Statutes

15 U.S.C. § 45 et seq. ............................................................................................................... 16

15 U.S.C. §1 ............................................................................................................................. 16

Plaintiff Willow Bridge Property Company LLC (formerly LPC Multifamily Holdco LLC d/b/a Lincoln Property Company) ("LPC") files this Brief in Support of Response to Defendant Arch Specialty Insurance Company's Motion for Summary Judgment ("Motion") (ECF 36 & 37), and respectfully states as follows:

## INTRODUCTION

Since late 2022, LPC has vigorously defended against allegations that it and other multifamily real estate owners and managers "replaced their independent pricing and supply decisions with collusion in setting rental prices and price fixing in the multifamily residential real estate lease market. . . in furtherance of their agreed aim of suppressing price competition" in violation of Section 1 of the Sherman Act.[1] Arch has known and understood these allegations since its first denial of coverage through to its last, yet Arch (1) never took the position that the Antitrust Suits *ab initio* do not allege "Wrongful Acts," and instead, (2) always based its denial of coverage on a single exclusion in the Policy, "Exclusion X." Arch's pre-litigation coverage position acknowledging that trigger of coverage was not at issue is compelling and damning evidence that its newly-minted defense to coverage (that the Antitrust Suits do not constitute "Wrongful Acts" as defined in the Policy) is meritless.

Regarding Exclusion X, issue has long been joined between the parties regarding the interpretation and application of this exclusion of coverage for "unfair trade practices and violations of consumer protection laws." Arch cannot meet its heavy burden to show that this seven-word phrase, when measured against broad and consistent underwriting and case law

---

[1] *See* ECF 31-3 (Ex. C) at 342 (Nov. 10, 2022 Arch denial of coverage for *Bason et al. v. RealPage, Inc., et al.*, No. 3:22-cv-01611 (S.D. Cal.)).

1

history regarding actual "Antitrust Exclusions," clearly and unambiguously excludes coverage for the alleged antitrust violations for which LPC seeks coverage.

Arch's Motion on its duties to defend and indemnify must therefore be denied, and conversely, LPC's Motion for Partial Summary Judgment regarding Arch's duty to defend should be granted.

## UNDISPUTED MATERIAL FACTS

1.    LPC provided timely noticed to Arch of the thirty-five putative class action lawsuits filed in district courts across the country (the "Antitrust Suits"), beginning with *Bason v. RealPage, Inc. et al.*, No. 22 cv 1611, filed October 18, 2022 in the Southern District of California. Stipulated Material Facts ("SMF") ¶¶ 1, 12.

2.    Through its Senior Claims Examiner of Professional Liability Claims, Arch denied coverage for the *Bason* suit by letter dated November 10, 2022. ECF 31-3 (Ex. C) at 341-43.

3.    In the denial of coverage, Arch summarized the allegations of the putative class-action as follows:

> Per the suit. . . Lessors [several large rental property managers/owners] replaced their independent pricing and supply decisions with collusion by agreeing to use a common third party (co-defendant RealPage, Inc.). . . to make unit specific pricing and supply recommendation [sic]. . . [t]o collude and avoid competition. . . in furtherance of their agreed aim of suppressing price competition. Per the suit, the conspiracy being challenged by the Plaintiffs is illegal under Section 1 of the Sherman Act[.]"

*Id.* at 342.

4.    Arch expressly acknowledged, however, that the allegations were unsubstantiated:

"***Arch recognizes that the allegations are unsubstantiated at this time and nothing in this letter is intended to suggest that they have any legal or factual merit.***" *Id.* (emphasis added).

5.    Arch denied coverage for the *Bason* suit solely based on Exclusion X. *Id.* at 343. It raised no other defenses to coverage. It did not contend that the *Bason* suit failed to allege

"Wrongful Acts" as defined by the Policy, even though that defense to coverage would have been "ripe" based on the *Bason* allegations of conspiracy to fix prices. *Id.*

6.     The Antitrust Suits have since been consolidated for pre-trial proceedings as part of a multi-district litigation ("MDL") captioned *In re: RealPage, Inc., Rental Software Antitrust Litigation*, Case No. 3:23-md-03071, MDL No. 3071, in the United States District Court for the Middle District of Tennessee. SMF ¶ 2.

7.     By letter dated October 17, 2023, Arch (through the same Senior Claims Examiner of Professional Liability Claims), denied coverage for the MDL. SMF ¶ 13 & ECF 31-4 (Ex. D).

8.     The denial letter (hereinafter, the "Denial of Coverage") includes a nearly seven-page recitation of the MDL plaintiffs' allegations regarding a nationwide conspiracy, repeated in large part by Arch in its summary of facts in support of its Motion. *Compare* ECF 31-4 at 345-52 *with* Mot. ¶¶ 8, 9.

9.     In relevant part, Arch's Denial of Coverage recites the MDL plaintiffs' allegations that:

   a.   Defendants (including LPC) "engaged in a nationwide conspiracy to fix and inflate the price of multifamily rental housing across the country" (ECF 31-4 at 345);

   b.   Defendants "provide RealPage with vast amounts of non-public proprietary data" to be "fed into a common data pool," "knowing that RealPage will use it to assist them and their competitors" (*id.* at 346);

   c.   "The RealPage software allows Lessor Defendants to operate as if they were one company setting prices at the monopoly level, which is the goal of any cartel" (*id.*);

     d.   "Property managers who use RealPage's revenue management software do so with the explicit and common goal of increasing rents for all members of the cartel by using coordinated algorithmic pricing" (*id.* at 347); and

     e.   "Defendants' price-fixing conspiracy is a per se unlawful restraint of trade under Section 1 of the Sherman Act" (*id.*).

    10.   Arch then denied coverage for the MDL "premised solely" on Exclusion X: "Plaintiffs' allegations appear to fall directly within the scope of Exclusion X. . . . Accordingly, it appears coverage for the [MDL] is therefore precluded under Exclusion X." *Id.* at 354; *see also* ECF 24 (Answer) ¶ 37 (admitting that Arch "denied coverage for the Antitrust Suits ***premised solely*** on 'Exclusion X' in the Policy, which excludes Loss 'in connection with any claim for, based upon, arising from or in any way related to unfair trade practices or violation of consumer protection laws.'") (emphasis added).

    11.   Arch's Denial of Coverage cited two other exclusions – Exclusion A and Exclusion B – as potentially "relevant" to Arch's "duty to indemnify" (but not to its duty to defend), if and to the extent the alleged conduct is later established by a final, non-appealable adjudication adverse to LPC. ECF 31-4 at 352.

    12.   Regarding Exclusion A, Arch wrote:

Exclusion A excludes coverage for any Loss based upon, arising from, or in any way related to the gaining of any personal profit, remuneration or advantage to which such Insured was not legally entitled, ***provided that this exclusion does not apply to Defense Costs. Here, Plaintiffs allege LPC engaged in a conspiracy to fix prices and charge higher rent than the market otherwise would have supported without the illegal agreement between LPC and its co-Defendants. To the extent it is determined LPC gained an advantage to which it was not legally entitled—namely, the ability to charge higher rent—as a result of its alleged agreement to restrain trade, indemnity coverage will be further precluded.***"

*Id.* at 354 (emphasis added).

    13.   Regarding Exclusion B, Arch wrote:

Exclusion B precludes coverage for any Loss based upon, arising from, or in any way related to any deliberately fraudulent or criminal act or omission or any willful violation of law by LPC, provided that such exclusion does not apply to Defense Costs. ***Plaintiffs allege LPC engaged in an unlawful price-fixing conspiracy and Defendants' anticompetitive acts were knowing and willful. To the extent it is determined that LPC intentionally violated the Sherman Act or any other similar or related state of [sic] federal law, indemnity coverage may be further precluded.***

*Id.* at 354 (emphasis added).

14.    Arch stipulates that Exclusions A and B "do not apply to Defense Costs, and therefore are not relevant to determining Arch's duty to defend." ECF 31 ¶ 17.

## ARGUMENT AND AUTHORITIES

LPC and Arch agree that Arch's duty to defend is distinct from and broader than its duty to indemnify, and that Arch would have no duty to indemnify if it had no duty to defend, but the parties' consensus ends there. "An insurer must defend its insured if the third-party plaintiff's factual allegations potentially support a covered claim, while the facts actually established in the underlying suit determine whether the insurer must indemnify its insured. In general, an insurer's duty to indemnify cannot be determined until after an underlying suit has been resolved." *Atl. Cas. Ins. Co. v. Taylormade Heat & Hair, LLC*, No. 3:19-cv-01618, 2020 WL 707801, at *2 (N.D. Tex. Feb. 11, 2020) (internal citations omitted). As discussed below, Arch has a present duty to defend, and its duty to indemnify cannot yet be decided.

## I.    UNPROVEN ALLEGATIONS OF CONSPIRACY TO FIX PRICES EXPESSLY TRIGGER ARCH'S DUTY TO DEFEND

### a.    Arch Repeatedly Accepted That The Antitrust Suits Allege "Wrongful Acts"

As LPC argued in opposition to Arch's untimely Motion to Amend, Arch admitted not once but twice, in its twice-filed Answer, that the Antitrust Suits ***do*** allege "Wrongful Acts," and Arch cannot seriously contend that this admission was inadvertent, and even were that true,

inadvertence does not meet the "good cause" standard required to amend pleadings out of time. *See* ECF 30 (Arch Motion to Amend) & 32 (LPC Opposition to Motion to Amend). LPC respectfully incorporates by reference its Opposition to Arch's untimely Motion to Amend its Answer, laying out why Arch has waived the right even to argue the point.

In addition to these procedural grounds for rejecting Arch's new "trigger of coverage" defense, the argument is wholly without merit, as best evidenced by Arch's own pre-litigation denials of coverage. In its October 2023 Denial of Coverage, for example, Arch explicitly denied coverage premised "solely" on Exclusion X in the Policy.[2] Insurers know that if they fail to raise all defenses to coverage in a timely fashion, they risk waiving those defenses. If Arch believed that LPC failed to fulfill its initial burden of establishing a trigger to coverage – namely the allegation of a "Wrongful Act" – based on the very same underlying allegations that Arch cites now, it would have said so at the time. Arch's new position is also belied by its reference to Exclusion A and Exclusion B in its Denial of Coverage, expressly stating that these exclusions (concerning allegations of intentional conduct) were only potentially relevant to the duty to indemnify – *not* to the duty to defend. Arch did not deny coverage on this basis, nor could it. Such an interpretation (one that Arch now puts forward) would be a bad faith interpretation of policy language that goes to great lengths to *promise* valuable defense coverage for alleged-but-unproven, groundless, false or fraudulent allegations.

### b. The Arch Policy Provides Defense Coverage For Alleged-But-Unproven Intentional Conduct

In its Motion, Arch spends much time on an incorrect tautology, that (a) conspiracy requires intent, (b) intentional torts do not meet the Policy's definition of Wrongful Acts (defined

---

[2] LPC, of course, disputes Arch's coverage-defeating interpretation of Exclusion X, and argues in Section II below that the exclusion must be narrowly construed in favor of coverage.

as "any negligent act, error or omission, misstatement, misleading statement, breach of duty or neglect or Personal Injury committed by any Insured"), and therefore (c) the Antitrust Suits do not trigger Arch's duty to defend or indemnify. Mot. at § A.

Intent, however, is not an on/off switch to coverage under Arch's professional liability policy. The very definition of "Wrongful Act" in the Policy includes all manner of intentional torts, as is typical for professional liability, a/k/a/errors and omissions, insurance coverage. Taking the easiest (but not only) example, the definition of "Wrongful Acts" includes "any actual or alleged. . . Personal Injury," which encompasses by definition all manner of intentional torts: "1. false arrest, detention, imprisonment or malicious prosecution; 2. wrongful entry or eviction; 3. invasion of the right of privacy; 4. libel, slander or other defamatory or disparaging material; or a publication or an utterance in violation of an individual's right of privacy." ECF 31-2 (Ex. A, Policy) at 310, 312 (Definitions of "Personal Injury" & "Wrongful Act"). To prove malicious prosecution, for example, a plaintiff must show, *inter alia*, "malice in the commencement of the proceedings" "which proceedings lacked probable cause." *Duzich v. Advantage Finance Corp.*, 395 F.3d 527, 529 (5th Cir. 2004). To maintain a defamation cause of action, a plaintiff must prove, *inter alia*, that the defendant published defamatory statements "while acting with [] actual malice"). *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). Arch's narrow construction of its duty to defend as being triggered only by allegations of "negligent" conduct is critically at odds with the Policy's plain-language promise to cover intentional torts.

In its October 2023 Denial of Coverage, Arch recited the very MDL allegations now emphasized in Arch's Motion as fitting within the conduct encompassed by Exclusion A and/or Exclusion B in the Policy. Regarding Exclusion A, Arch first characterized the relevant conduct as follows: "[The MDL] Plaintiffs allege LPC engaged in a conspiracy to fix prices and charge

higher rent than the market otherwise would have supported without the illegal agreement between LPC and its co-Defendants." According to Arch, this alleged conduct was (and is) encompassed by Exclusion A, which excludes indemnity *but not defense* coverage for "the gaining of any personal profit, remuneration or advantage to which such Insured was not legally entitled, if established by any final non-appealable adjudication adverse to such Insured." *See* ECF 31-4 at 352, 354. Arch plainly understood that only "indemnity coverage" would be "precluded" by this conduct, and only if the allegations were proven to be true: "*To the extent* it is determined LPC gained an advantage to which it was not legally entitled—namely, the ability to charge higher rent—as a result of its alleged agreement to restrain trade, *indemnity coverage will be further precluded*." *Id.* at 354 (emphasis added).

Regarding Exclusion B, Arch explained that "[The MDL] Plaintiffs allege LPC engaged in an unlawful price-fixing conspiracy and Defendants' anticompetitive acts were knowing and willful," which conduct was (and is), according to Arch, encompassed by Exclusion B, excluding coverage for "any deliberately fraudulent or criminal act or omission or any willful violation of law." *Id.* Again, Arch plainly understood that only "indemnity coverage" would be "precluded" by this conduct, and only if the allegations were proven to be true: "*To the extent* it is determined LPC intentionally violated the Sherman Act or any other similar or related state or federal law, *indemnity coverage may be further precluded*." *Id.* (emphasis added).

Arch did not assert the purported "silver bullet" defense to coverage in 2023 that its counsel makes now—that the Antitrust Suits do not allege "Wrongful Acts"—because Arch (through its Senior Claims Examiner) understood that the Policy expressly *grants* valuable defense costs coverage for allegations of fraudulent, criminal, and/or willful conduct not yet proven by a final, non-appealable adjudication. Both Exclusions A and B, often referred to as

"intentional acts" exclusions, contain an express "defense costs exception" to the exclusions. *See* ECF 31-2 (Policy) at 313 (Exclusions A & B) ("The Insurer shall not pay Loss" for "the gaining of any personal profit, remuneration or advantage to which such Insured was not legally entitled" or "any deliberately fraudulent or criminal act or omission or any willful violation of law, "provided this exclusion will not apply to Defense Costs") (emphasis added). Under Texas law, exceptions to exclusions—like the Policy's "defense costs" exception to the intentional acts exclusions—are broadly construed in favor of coverage. *Penn-Am. Ins. Co. v. Tarango Trucking, LLC*, 30 F.4th 440, 446 (5th Cir. 2022). Arch promised to defend LPC against the very allegations of "intentional conduct" raised in the Antitrust Suits, unless and until LPC is found guilty by a final non-appealable adjudication. The Policy does not permit Arch to act preemptively as LPC's judge, jury, and executioner, as it attempts to do here.[3]

Arch can cite to only one case, in the wholly inapposite context of an occurrence-based homeowners insurance policy, to support its meritless argument that its errors and omissions

---

[3] Arch repeats more than half a dozen times in its Motion that the MDL Plaintiffs allege a "*per se* unlawful restraint of trade under Section 1 of the Sherman Act." Mot. ¶¶ 1, 8 (p. 4), 9, 17, 44, 47. The District Court overseeing the MDL has already ruled on *and rejected* this "per se" theory of liability, citing numerous "imperfections" in the MDL pleadings, including failure to allege dates that defendants joined the purported conspiracy, failure to allege direct agreements or communications between the defendants, and failure to allege absolute delegation of price-setting to RealPage. *In re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, No. 3:23-md-03071, 2023 WL 9004806, at *23 (M.D. Tenn. Dec. 28, 2023).

Reading Arch's Motion, one could almost forget that the MDL Defendants are still in the early stages of mounting a vigorous defense against the Antitrust Suits. In Arch's own words pre-coverage litigation, "the allegations are unsubstantiated at this time," and Arch even now should not be suggesting, much less arguing, that the allegations "have any legal or factual merit." ECF 31-3 at 342.

It also is particularly problematic for Arch to rely on or even cite the DOJ's single-defendant suit against RealPage, Inc. (Mot. at 3, n.3), given that, as Arch well knows, Arch's duty to defend is governed by the "eight corners" of the MDL pleadings and the Policy only. Mot. ¶ 24 (citing Texas "eight corners" rule).

Policy can only be triggered by allegations of negligence.[4] In *Nationwide Mutual Insurance Co. v. Choi*, No. 22-cv-01231, 2023 WL 4747388 (S.D. Tex. July 25, 2023), homeowners sought defense and indemnity coverage under their homeowners insurance for a suit alleging that that they stole eighty million dollars' worth of Bitcoin using malware. For the *Choi* policy to be triggered, the underlying pleading had to allege an "'occurrence' resulting from negligent personal acts," with "occurrence" defined as "an accident … which results, during the policy period, in … 'property damage.'" *Id.* at *1 (alterations in original). Significantly but unsurprisingly, the terms "occurrence" and "accident," defined or otherwise, do not appear *anywhere* in the Arch Policy. In sharp contrast to the narrow "accident" coverage provided by the Choi's homeowners insurance, the Arch errors and omissions policy promises broad business risk insurance for not only "negligent acts, errors, or omissions," but also intentional torts and alleged-but-unproven "deliberately fraudulent or criminal acts or omissions," "willful violations of law," or illegal advantage. Nothing can be gleaned from *Choi*.

At best, the definition of Wrongful Act and the defense costs exception to the intentional conduct exclusions (Exclusions A and B), when read together, create an ambiguity in the Policy.

---

[4] *See, e.g.*, *Citizens Ins. Co. of Am. v. Panzica Bdlg. Corp.*, 507 F. Supp. 3d 1047, 1052-53 (N.D. Ind. 2020), citing *9A Couch on Insurance* § 129:1 (3d ed. 2005) (other internal citations omitted):

> The distinction between CGL policies and professional E&O policies has been described as follows:
>
>> [T]here is a difference between risks that arise out of a business and business risks. While the former may be covered under a commercial general liability insurance policy, the latter is not. Business risk occurs as a consequence of the insured not performing well and is a component of every business relationship that is necessarily borne by the insured in order to satisfy its customers.
>
> Even when a claim sounds in tort rather than contract, as here, if the tort liability arises from contractually assumed duties, it is ordinarily a professional error or omission. In contrast to professional errors and omissions, a CGL policy insures against "slip and fall accidents and the like."

The trigger of coverage per the definition of "Wrongful Act"—for "any actual or alleged negligent act, error or omission"—cannot be squared with Exclusion A's express grant of defense coverage for alleged illegal gains, or Exclusion B's express grant of defense costs coverage for "any deliberately fraudulent or criminal act or omission or any willful violation of law." (emphasis added). This ambiguity in the policy language must be construed strictly against Arch and liberally in favor of LPC. *See Schnell v. State Farm Lloyds*, 98 F.4th 150, 156 (5th Cir. 2024) (citations omitted); *see also Glover v. Nat'l Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977) (courts "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, *even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.*") (emphasis added). Arch's interpretation of its policy language would also impermissibly render Exclusions A and B superfluous, and the duty to defend embedded therein illusory. *See Cincinnati Specialty Underwriters Ins. Co. v. F&H Constr. Co., LLC*, No. 2:22-CV-00010, 2023 WL 2529557, at *2 (S.D. Tex. Jan. 25, 2023) (citing *ATOFINA Petrochemicals, Inc. v. Cont'l Cas. Co.*, 185 S.W.3d 440, 444 (Tex. 2005) (per curiam)) ("A matter of policy construction cannot be resolved in a manner that renders any portion of the policy meaningless, useless, or inexplicable. (rejecting policy construction that would render coverage illusory).

## II.   NO COURT HAS APPLIED THE PHRASE "CONSUMER PROTECTION LAWS" TO EXCLUDE COVERAGE FOR ANTITRUST CLAIMS, WHILE MANY COURTS HAVE FOUND THE PHRASE "UNFAIR TRADE PRACTICES" TO BE AMBIGUOUS, AND CONSTRUED THE PHRASE IN FAVOR OF THE INSURED

Arch has a problem. It used a seven-word phrase in a single exclusion purportedly to exclude antitrust coverage when public-record underwriting and case law plainly show that Arch's insurance company brethren have used *two* exclusions and a veritable "kitchen sink" of phrases to exclude the same alleged conduct. Arch therefore must argue that its policy contains a

11

"Consumer Protection Exclusion"—a label just coined by Arch—that excludes coverage for antitrust suits, or that the phrase "unfair trade practices" unambiguously excludes coverage for same. Unfortunately for Arch, the case law is utterly silent on the first point, and it directly contradicts Arch on the second.

<blockquote>

a. **"Violation of Consumer Protection Laws" Refers to Consumer Protection Claims**

</blockquote>

LPC can indeed make a "straight-faced argument" that the phrase "consumer protection laws" does not refer to antitrust litigation (Mot. ¶ 44), because this very argument is well-recognized in the case law. The law distinguishes between antitrust and anticompetition laws (15 U.S.C. §1 and its state law equivalents), on the one hand, and laws prohibiting unfair methods of competition or unfair or deceptive acts or practices affecting commerce (15 U.S.C. § 45 et seq. and their state law equivalents), on the other. In keeping with these distinct areas of law, the case law also understands and enforces the different terms of art used in insurance policies to describe these separate legal regimes. Only at the most general word-association level can these two distinct legal frameworks be lumped together as "related to 'consumer protection laws'" (Mot. at ¶ 44), and Arch cannot cite to a single case, because there are none, where a court has held that the phrase "consumer protection laws" excludes coverage (unambiguously or otherwise) for antitrust claims.

Were it true that the phrase "violation of consumer protection laws" could encompass both antitrust and consumer protection claims, insurance companies would not need to draft separate exclusions for these two bodies of law. But they do.

In *Avenue5 Partners LLC, et al. v. Endurance America Specialty Insurance Co.*, No. 23-2-11110-9 SEA (Wash. Super. Ct.), involving one of LPC's co-defendant's claim for coverage for

these very Antitrust Suits, the professional liability policy at issue excluded coverage for, *inter alia*:

> b. <u>violation of consumer protection laws</u>; or

> c. price fixing, restraint of trade, monopolization, or any violation of the Federal Trade Commission Act, <u>the Sherman Anti-Trust Act</u>, the Clayton Act, each as amended, or any other federal, state, local, or foreign laws, regulations, or common law pertaining to antitrust, monopoly, price fixing, price discrimination, predatory pricing, or restraint of trade, or that otherwise protect competition[.]

*See* ECF 35-1, Appx. to Plaintiff's Brief in Support of Motion for Partial Summary Judgment, at 92 (certified copy of *Avenue5* Compl. Ex. 1 (Insurance Policy), *also available through* Westlaw, 2023 WL 10350716) (emphasis added).

In *Saint Consulting Group, Inc. v. Endurance America Specialty Insurance Co.*, No. 11-11279, 2012 WL 1098429 (D. Mass. Mar. 30, 2012), regarding insurance coverage for alleged violations of, *inter alia*, "the Sherman Antitrust Act, the Illinois Antitrust Act, and claims for tortious interference with prospective economic advantage, common law fraud, abuse of process, and conspiracy," that policy too contained two separate exclusions:

> Section III(N) excludes "any Claim based upon or arising out of any actual or alleged price fixing, restraint of trade, monopolization or unfair trade practices including actual or alleged violations of <u>the Sherman Anti–Trust Act</u>, the Clayton Act, or any similar provision or any state, federal or local statutory law or common law anywhere in the world."

> Section III(Q)(4) excludes coverage resulting from "false, deceptive or unfair business practices, <u>violation of consumer protection laws</u>, or false or deceptive Advertisements other than Personal and Advertising Injury."

*Id.* at *1 (emphasis added). The parties did not even argue that the phrase "violation of consumer protection laws" in "Exclusion Q" (identical to the phrase included in Arch's Exclusion X) was relevant to deciding coverage for the alleged antitrust violations.

The problem for Arch is that the phrase "unfair trade practices" in the cases cited above also was not material to determining whether allegations of antitrust violations were excluded

from coverage. In *Avenue5*, the phrase "unfair trade practices" *did not even appear* in the exclusion's subparagraph c on which the insurer successfully relied to exclude coverage for these very Antitrust Suits. In *Saint Consulting*, the court held that "Exclusion N" "obviously" excluded "claims of Sherman Act and Illinois Antitrust Act violations," *but excised* the phrase "unfair trade practices" from its recitation of the material policy language. *See id.* at *3 ("Exclusion N exempts from coverage claims 'arising out of **...** actual or alleged violations of the Sherman Anti–Trust Act, the Clayton Act, or any similar provision or [sic] any state, federal or local law.' The Rubloff action specifically includes claims of Sherman Act and Illinois Antitrust Act violations. These claims obviously fall within Exclusion N.") (alterations in the original).

Arch bears the heavy burden "of establishing that 'the plain language of a policy exclusion or limitation allows the insurer to avoid coverage,'" with exclusions "narrowly construed, and all reasonable inferences [] drawn in the insured's favor." *Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 923 (N.D. Tex. 2009) (Fitzwater, J.) ("*Sowell*") (citing *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 370 (5th Cir. 2008)); *see also Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 668 (Tex. 2008) ("Exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured," and "[a]n intent to exclude coverage must be expressed in clear and unambiguous language."). If Arch wanted to "clearly" exclude antitrust coverage, it should not have used the phrase "violation of consumer protection laws," a term of art adopted by the insurance industry and recognized by the case law to exclude coverage for consumer protection claims, a different and clearly delineated body of law.

14

**b.  Insurers Have Argued That The Phrase "Unfair Trade Practices" Also Can Refer to Consumer Protection Claims**

Arch also cannot rest on the phrase "unfair trade practices" to exclude coverage for the Antitrust Suits. Arch's own insurance company brethren have "reasonably" interpreted the phrase "unfair trade practices" as referring not to antitrust claims but to consumer protection actions.

In *Integra Telecom, Inc. v. Twin City Fire Insurance Co.*, No. 08-906, 2010 WL 1753210 (D. Or. Apr. 29, 2010), the policyholder successfully sought coverage for a class action lawsuit alleging violation of Washington's Consumer Protection Act (CPA). *Id.* at *1. The policy excluded coverage for any "Claim"

> based upon, arising from, or in any way related to price fixing, restraint to trade, monopolization, <u>unfair trade practices</u> or any violation of the Federal Trade Commission Act, Sherman Anti–Trust Act, Clayton Act, or any similar law regulating anti-trust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities.

*Id.* (emphasis in original). The insurance company argued that this drumbeat of antitrust violations need not be limited to exclude only antitrust claims, pointing out that there were "at least seventeen laws that are similar to the Federal Trade Commission Act called 'Little FTC Acts," violations of which "may include deceptive business practices like a violation of the Washington CPA." *Id.* at *5. The court recognized and upheld the distinction between antitrust law, on the one hand, and consumer protection laws, on the other. Though acknowledging the reasonableness of the insurance company's interpretation of "unfair trade practices" as excluding coverage for consumer protection claims, the court also had to agree with the policyholder that the phrase, couched as it was among antitrust and anti-competitive trade practices, could reasonably be interpreted to exclude antitrust claims. *Id.* (applying the canon of *noscitur a sociis*, a principle of contract construction that instructs "the meaning of an unclear word or phrase should be determined by the words immediately surrounding it," "it is reasonable for an insured

15

to interpret 'unfair trade practices' as limited to antitrust and anticompetitive violations because the terms that come before and after it are reasonably limited to antitrust or anti-competitive conduct.").

In *James River Insurance Co. v. Rawlings Sporting Goods, Inc.*, No. 19-6658, 2021 WL 346418, at \*1 (N.D. Cal. Jan. 25, 2021) ("*Rawlings*"), an insured sought coverage for a class action complaint alleging "several consumer protection claims," including violations of California's Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act. The policy contained an express "Anti-trust Exclusion," excluding loss "in connection with any Claim alleging, arising out of, based upon or attributable to any violation of any law, whether statutory, regulatory or common, as respects any of the following: anti-trust, business competition, <u>unfair trade practices</u> or tortious interference in another's business or contractual relationships." *Id.* at \*2, 4 (emphasis added). The insurance company argued that the phrase "unfair trade practices," though couched as it was among a laundry-list of anti-competitive business practices, should be read to exclude coverage for the alleged consumer protection violations. The court viewed the issue as "admittedly a close one," but "in the insured-friendly state of California, 'any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer[.]'" *Id.* (citation omitted). The court therefore granted summary judgment in favor of the insured. *Id.* at \*8.[5]

Lastly, in *Big Bridge Holdings, Inc. v. Twin City Fire Insurance Co.*, 132 F. Supp. 3d 982, 984-85 (N.D. Ill. 2015), the insured sought coverage for eight underlying lawsuits all

---

[5] Arch tries to distinguish *Rawlings* by noting that the *Rawlings* policy excluded only antitrust violations, but not (as the Court held, against the insurer and in favor of the insured) an exclusion for consumer protection claims. Mot. ¶ 50. Arch misses the point. The case demonstrates that the phrase "unfair trade practices" is a term of art susceptible to more than one reasonable interpretation, and that ambiguity must be interpreted in favor of the insured.

alleging CPA claims. The D&O policy excluded coverage for "price fixing, restraint of trade, monopolization, <u>unfair trade practices</u> or any violation of the Federal Trade Commission Act, Sherman Antitrust Act, Clayton Act, or any similar law regulating antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities." *Id.* at 987 (emphasis added). The insurance company argued that the phrase "unfair trade practices" referred not to antitrust claims but to consumer protection claims. The court noted "some appeal" to the insurer's argument, but ultimately ruled in favor of the insured. *Id.* at 990 (citation and quotation omitted) ("[T]o resolve the issue, the Court need only find ambiguity in the language of the exclusion. Because 'unfair trade practices' is, at a minimum, ambiguous, the Court must follow Minnesota law, whereby any ambiguity is resolved in favor of the insured."); *see also Rawlings*, 2021 WL 346418, at *6, n.7 ("This Court would note that in the specific policy language in *Big Bridge Holdings* all references to the excluded conduct were, *with the exception of the term 'unfair trade practices,'* related to anti-competitive business practices and not to consumer protection provision.'") (emphasis added).

Here, LPC and Arch find themselves on opposite sides of the arguments made in *Integra, James River,* and *Big Bridge*. It is LPC arguing that the phrase "unfair trade practices," bolstered as it is by the phrase "violation of consumer protection laws," should be read as excluding consumer protection claims, and Arch arguing that the phrase excludes antitrust claims. Applying the same cannons of construction applied in all of these cases, however—that (a) a phrase takes its meaning from the words immediately surrounding it, (b) exclusions are interpreted strictly and narrowly against the Insured, and (c) two reasonable contract language interpretations create an ambiguity that must be interpreted in favor of the insured—the court must find in favor of coverage for LPC. LPC's interpretation of the exclusion for "any Claim for, based upon, arising

17

from or in any way related to unfair trade practices or violation of consumer protection laws" is reasonable, and LPC therefore must prevail.

## CONCLUSION

For the foregoing reasons, Plaintiff LPC respectfully requests that the Court deny Defendant Arch Specialty Insurance Company's Motion for Partial Summary Judgment.

Dated: September 20, 2024              Respectfully submitted,

*/s/ Julie Hammerman [9/20/2024]*
J Mark Chevallier (TX Bar No. 04189170)
**Rochelle McCullough LLP**
901 Main Street, Suite 3200
Dallas, Texas 75202
Telephone: 214.580.2530
Facsimile:  888.467.5979
Email: mchevallier@romclaw.com

Julie L. Hammerman (*Pro Hac Vice*)
**Thompson Hammerman Davis LLP**
1717 K St., NW, Suite 900
Washington, D.C. 20006
Telephone: 202.536.7529
Facsimile: 202.318.5356
E-Mail: jhammerman@thompsonhd.com

*Counsel for Plaintiff*

18

## **CERTIFICATE OF SERVICE**

I, Julie Hammerman, certify that on September 20, 2024, I served a true and correct copy of the foregoing document via electronic service on:

Robert J. Witmeyer (TX Bar No. 24091174)
rwitmeyer@mayerllp.com
Summer L. Frederick (TX Bar No. 24067764)
sfrederick@mayerllp.com
Mayer LLP
750 N. Saint Paul Street, Suite 700
Dallas, Texas 75201
Telephone: 214.379.6900
Facsimile: 214.379.6939

*Counsel for Defendant Arch Specialty Insurance Company*

*/s/ Julie Hammerman [9/20/2024]*
Julie Hammerman