IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **WILLOW BRIDGE PROPERTY COMPANY, LLC,** | § § § § | |
| *Plaintiff*, | § § | **CIVIL ACTION NO. 3:24-cv-00029-D** |
| v. | § § | |
| **ARCH SPECIALTY INSURANCE COMPANY** | § § § | |
| *Defendant*. | § § § | |

**DEFENDANT ARCH SPECIALTY INSURANCE COMPANY'S
REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE JUDGE OF SAID COURT**:

Defendant Arch Specialty Insurance Company ("Arch") files this Reply in Support of its Motion for Summary Judgment (the "Motion"), and respectfully shows as follows:

### I.   INTRODUCTION AND SUMMARY OF THE ARGUMENT

1.   Plaintiff Willow Bridge Property Company, LLC's ("LPC") Response in Opposition to Arch's Motion (the "Response") is replete with errors. LPC claims that the argument that coverage is not triggered by the allegations in the MDL is a "newly-minted defense." It is not. LPC asserts that Arch waived its right to raise trigger of coverage in this suit based upon what is written in a coverage disclaimer letter. It did not. LPC discusses two exclusions that are concededly not at issue in this case and suggests that their language should apply to the Consumer Protection Exclusion. It does not. LPC claims that "Wrongful Acts" means "intentional acts." It does not. LPC asserts that the Court should adopt its construction of the Consumer Protection Exclusion because it is the insured. LPC misstates the law.

Defendant Arch Specialty Insurance Company's Reply in Support of its Motion for Summary Judgment                                                                                         Page 1

2.  What LPC does not say is even more important that what it does. *Nowhere* in its Response does LPC cogently explain what allegations in the MDL are potential allegations of **Wrongful Acts**. In other words, it does not even attempt to meet its burden to prove coverage.

3.  Additionally, even if LPC had asserted that any specific allegation may potentially qualify as a covered claim, it did not establish why the Consumer Protection Exclusion would not preclude coverage. Disagreement is not tantamount to ambiguity. Absent ambiguity, LPC is not entitled to a construction of the exclusion that favors coverage. The Consumer Protection Exclusion unambiguously precludes Arch's duty to defend LPC in the MDL. The same reason that precludes its duty to defend precludes any possibility it could ever have a duty to indemnify.

4.  There is no genuine issue of material fact. The Court should grant Arch's Motion.

## II.   ARGUMENT AND AUTHORITIES

### A.   LPC Has The Burden To Prove Coverage

5.  LPC continually complains that Arch has tasked it with the burden of proving coverage. It repeatedly claims that Arch's "defense" regarding trigger is "newly minted" (ECF 30, p. 1), "new" (ECF 30, p. 6), and a "silver bullet defense" (ECF 30, p. 11). It claims that trigger of coverage is "wholly without merit, as best evidenced by Arch's own pre-litigation denials of coverage." ECF 41, p. 6. It continues to cite to a single paragraph of Arch's Original Answer, which it knows is the subject of a pending motion for leave to amend.[1]

6.  In its Response, LPC clearly and obviously tries to avoid its burden. It declares that the Court should disregard the burden because either the "defense" (i.e., its own burden to prove coverage) is new, or Arch waived the right to raise it. Arch has addressed the issue of waiver below.

---

[1] Arch sought leave to amend a single paragraph of its Answer for consistency with the remainder of its Answer and affirmative defense regarding trigger of coverage. *Id.*; *see also* ECF 30, 30-1.

7.  LPC should know it bears the burden when it brings suit for breach of contract on an insurance policy. LPC fails to recognize that **Arch** did not task LPC with the burden to prove coverage, nor is its position new or novel. It is a basic tenet of Texas insurance law that the insured must plead and prove that a policy provides coverage. *JAW The Pointe, LLC v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015). LPC is the insured. The burden starts with LPC. LPC did not meet its burden.

8.  If Arch ever had a duty to tell LPC that Arch intended to start the coverage analysis with the insuring agreement, it did so in its affirmative defenses. *See* ECF 24, p. 15 ¶ 57 ("To the extent LPC does not face liability for Loss resulting from a Claim first made against LPC during the Policy Period or Extended Reporting Period for a Wrongful Act committed on or subsequent to the Retroactive Date, the Insuring Agreement is not triggered."). As the insured seeking coverage, however, LPC should have anticipated it would need to prove its case.

**B.   Coverage Position Letters Do Not Create Coverage Or Negate Burdens**

9.  In an effort to avoid its burden to prove coverage, LPC argues that Arch did not reference trigger of coverage in its declination letter. ECF 41, p 9. It asserts: "Insurers know that if they fail to raise all defenses to coverage in a timely fashion, they risk waiving those defenses." ECF 41, p. 9. LPC is wrong on both accounts.

10. Arch's declination letter plainly states: "To the extent LPC does not face liability from Loss resulting from a Claim first made against LPC during the Policy Period or Extended Reporting Period for a Wrongful Act committed on or subsequent to the Retroactive Date, the insuring agreement will not be triggered." ECF 31-4.

11. LPC's argument related to the coverage position letter is a red herring, however. The letter has no place in an eight-corners case, where the Court compares the four corners of the

Policy to the four corners of the complaint. *Loya Ins. Co. v. Avalos*, 610 S.W.3d 878, 879 (Tex. 2020).[2]

12. Further, Texas law does not support LPC's argument with respect to waiver. Under Texas law, "[t]he doctrine of estoppel cannot be used to create insurance coverage where none exists by the terms of the policy." *Tex. Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601, 602 (Tex. 1988) (citing *Washington Nat'l Ins. Co. v. Craddock*, 130 Tex. 251, 109 S.W.2d 165 (Tex. 1937)); *Minnesota Mut. Life Ins. Co. v. Morse*, 487 S.W.2d 317, 320 (Tex. 1972) ("[W]aiver and estoppel cannot enlarge the risks covered by a policy and cannot be used to create a new and different contract with respect to the risk covered and the insurance extended."); *see also Pogo Resources, LLC v. St. Paul Fire & Marine Ins. Co.*, No. 3:19-cv-2682, 2022 WL 286206 at *13 (N.D. Tex. Jan. 31, 2022). Parties can only change contracts by contractual means. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 787 (Tex. 2008).

13. In *Pogo*, an insured did not comply with a 90-day reporting requirement in a pollution exclusion. 2022 WL 286206 at *14. This Court determined that compliance with the policy's notice requirement was part of the trigger of coverage. *Id*. As such, coverage was barred pursuant to the policy's terms, even though the insurer had known about the claim for two years and had promised to pay. *Pogo*, 2022 WL at *14. The Court explained: "allowing Plaintiff to disregard [the notice provision] would substantially alter and enlarge the risks covered under the insurance policy." *Id*. (citations omitted).

14. The same is true here. The parties agreed in their contract that Arch would provide coverage for **Wrongful Acts**, *not all allegations of any variety, made in any lawsuit.* If a suit

---

[2] In FN 3 of its Response, LPC provides a lengthy status update regarding rulings in the MDL. However, rulings in underlying litigation are also outside the eight-corners.

Defendant Arch Specialty Insurance Company's Reply in Support of its Motion for Summary Judgment                                                                                                                                Page 4

contains no allegation of a **Wrongful Act**, there is no possibility that coverage exists irrespective of what a letter says. A letter cannot enlarge the scope of coverage.

**C.     There Is No "Defense Costs Exception" To The Consumer Protection Exclusion**

15.     LPC concedes that the MDL alleges only intentional conduct. ECF 41, p. 9. It argues that Arch must defend it in the MDL because the Policy "provides defense coverage for alleged-but-unproven intentional conduct." ECF 41, pp. 6 - 11. LPC bases its argument on the theory that two exclusions (Exclusions A[3] and B[4]) contain a carveback for defense costs. *See id*. According to LPC, this means that the Consumer Protection Exclusion **must** also contain such a carveback.

16.     The parties stipulated that Exclusions A and B are not at issue with respect to determining Arch's duty to defend. ECF 31 p. 3 ¶ 17. Given LPC's reference to and reliance upon Exclusions A and B in its Response, it appears that LPC has changed its mind. Regardless, any argument that language from Exclusions A and B should be inserted into the Consumer Protection Exclusion has no merit.

17.     Exclusions A and B are conduct exclusions. They preclude coverage for particular conduct <u>after it is established by a final, non-appealable adjudication that is adverse to the insured</u>. The conduct exclusions contain a carveback for defense to allow for a contingency. Only Exclusions A and B contain a carveback for defense. ECF 31-2, p. 313. The other 22 exclusions in

---

[3] Exclusion A provides that Arch shall not pay "Loss . . . based upon, arising out of, or in any way related to the gaining of any personal profit, remuneration, or advantage to which such Insured was not legally entitled, if established by any final non-appealable adjudication adverse to such Insured; provided this exclusion will not apply to Defense Costs." ECF 31-2, p. 313.

[4] Exclusion B provides that Arch shall not pay "Loss . . . based upon, arising from, or in any way related to any fraudulent or criminal act or omission . . . if established by any final non-appealable adjudication adverse to such Insured; provided this exclusion will not apply to Defense Costs." ECF 31-2, p. 313.

the Policy do not.

18.     **The Consumer Protection Exclusion is not a conduct exclusion**. It precludes coverage for any **Claim** based upon, arising out of, or in any way related to unfair trade practices or violation of consumer protection laws. There is no potential coverage for claims that fall within the ambit of the Consumer Protection Exclusion. They are excluded, whether or not there is a final adjudication.

19.     Nonetheless, LPC seeks the Court to find that Arch promised to defend LPC against the (concededly) intentional conduct alleged in the MDL, unless and until LPC is found guilty by a final and non-appealable judgment. *See* ECF 41, p. 9. In other words, it seeks to add the same defense carveback that is present in the conduct exclusions and claims that the "defense costs exception" is ambiguous. *Id*. at p. 10. But the Consumer Protection Exclusion unambiguously does not include a defense costs carveback.

20.     In *Paloma Resources, LLC v. Axis Insurance Company*, the court clarified that a conduct exclusion's "final and non-appealable" language does not extend to exclusions in which it does not appear. 452 F. Supp. 3d 579, 587 (S.D. Tex. 2020).  The court explained:

> Where one exclusion in the Paloma insurance policy contains an express limitation on coverage, it would be unreasonable for the court to read that limitation into a completely differently worded exclusion. In other words, if the intellectual property exclusion required an actual determination of a claim, it would state so in no uncertain terms like the illegal profit/conduct exclusion does. The intellectual property exclusion does not do so.

*Id*. So, too, here. If the Consumer Protection Exclusion included a defense carveback and required an actual determination of a claim, it would state so in no uncertain terms. It does not. Arch did not promise to defend LPC for the types of claims that are alleged in the MDL.

21.     Further, a contract's plain language controls. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). Courts should refuse to insert

language or provisions the parties did not use, or to rewrite private agreements. *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017). The Court should decline to read a defense obligation into the Consumer Protection Exclusion where none exists.

**D.     The Policy Does Not Cover Intentional Acts**

22.     LPC claims that that "[t]he very definition of "Wrongful Act" in the Policy includes all manner of intentional tort." It then quotes the Policy's definition of "Personal Injury," which includes acts that may at least ostensibly be intentional. There are two fallacies in LPC's argument. First, LPC does not quote the whole definition of **Wrongful Acts**. The whole definition is:

> "**Wrongful Act**" means any actual or alleged negligent act, error or omission, misstatement, misleading statement, breach of duty or neglect, **or Personal Injury** committed by any Insured; or by any other person for whom the **Insured Organization** is legally responsible, solely in the performance of or failure to perform **Real Estate Development Services**.

ECF 31-2, p. 312.

23.     To be clear, the Policy covers either "actual or alleged **negligent** acts … **or** Personal Injury[.]" Critically, LPC appears to have overlooked the disjunctive "or," and conflated the terms. The definition of **Wrongful Acts** does not say that the Policy covers "actual or alleged *intentional* acts."

24.     Second, the Policy does not cover "all manner of intentional tort." It covers "Personal Injury," which is narrowly defined to include "any actual or alleged 1) false arrest, detention, imprisonment or malicious prosecution; 2) wrongful entry or eviction; 3) invasion of the right of privacy or 4) libel, slander or other defamatory or disparaging material; or a publication or utterance in violation of an individual's right of privacy." Ex. 31-2, p. 310. There are no allegations of Personal Injury in the MDL, nor does LPC contend that there are. The only part of **Wrongful Acts** that is at issue is "actual or alleged negligent acts."

25. LPC did not even attempt to establish that the MDL contains any allegations of negligent acts. It concedes that the MDL alleges intentional acts. There are undisputedly no claims within the scope of the Policy's insuring agreement.

### E. Disagreement Is Not Ambiguity

26. Finally, LPC argues that the Court must adopt its construction of the exclusionary clause because it is the insured. It states:

> Here, LPC and Arch find themselves on opposite sides of the arguments made in *Integra*, *James River*, and *Big Bridge*. It is LPC arguing that the phrase "unfair trade practices" bolstered as it is by the phrase "violation of consumer protection laws,' should be read as excluding consumer protection claims, and Arch arguing that the phrase excludes antitrust claims.[5] Applying the same cannons of construction applied in all of these cases, however – that (a) a phrase takes its meaning from the words immediately surrounding it, (b) exclusions are interpreted strictly and narrowly against the Insured, and (c) two reasonable contract language interpretations create an ambiguity that must be interpreted in favor of the insured – the court must find in favor of coverage for LPC.

ECF 41, p. 17.

27. LPC has provided both an incorrect statement of Arch's position and an incorrect legal standard. Arch does not argue that the Consumer Protection Exclusion applies to *only* antitrust claims, as LPC suggests. The Consumer Protection Exclusion unambiguously applies to preclude coverage for both unfair trade practices and violations of consumer protection laws. The MDL involves violations of antitrust laws. Antitrust laws are consumer protection laws. As such, the claims are excluded.

28. In August of this year, this Court held:

> The party seeking coverage has the initial burden of establishing that the underlying claims potentially state a cause of action covered by the policy. If the petition or complaint alleges at least one cause of action potentially within the policy's coverage, then the insurer is obligated to defend the insured. After the insured meets his burden to show that the alleged facts in the petition state a potential claim

---

[5] This is an incorrect statement of Arch's position, but it is irrelevant for purposes of this Reply.

> against him, to defeat the duty to defend, the insurer bears the burden of showing that the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of all claims. If an exclusion is subject to more than one reasonable construction, courts adopt the interpretation urged by the insured as long as it is not unreasonable and even if the insurer's interpretation appears to be more reasonable or a more accurate reflection of the parties intent.

*Mid-Continent Cas. Co. v. Vibrant Builders*, LLC, 3:22-cv-2184, 2024 WL 3891362 (N.D. Tex. Aug. 21, 2024).

29. Courts do not simply "find for the insured" because the insured disagrees that an exclusion applies. *See Carolina Cas. Co. v. Sowell*, 603 F. Supp.2d 914, 923 (N.D. Tex. 2009) (Fitzwater, J.) ("These rules favoring the insured, however, are applicable only when there is an ambiguity in the policy; if the exclusions in question are susceptible to only one reasonable interpretation then these rules do not apply.") (citations omitted). For the Court to find in its favor, LPC must:

- Establish that there is at least one claim within the policy's coverage
- Urge a reasonable construction of the exclusion

30. LPC did neither. It concedes there is no claim within the scope of the Policy. But even if there were, all LPC has done is expressed disagreement with Arch's construction of the Consumer Protection Exclusion. LPC has advanced no reasonable construction of its own. The Consumer Protection Exclusion is susceptible to only one reasonable interpretation—it unambiguously precludes coverage for unfair trade practices and violations of consumer protection laws, including antitrust laws.

**PRAYER**

Arch has no duty to defend LPC against the claims made the basis of the MDL. LPC concedes there are no allegations within the scope of the Policy's insuring agreement. Even if there were, all of the claims are excluded by the Consumer Protection Exclusion.

The same reasons that preclude Arch's duty to defend preclude any possibility that it will ever have a duty to indemnify.

Arch respectfully requests that the Court grant its motion for summary judgment

Respectfully submitted,

By: */s/ Robert J. Witmeyer*
    **ROBERT J. WITMEYER**
    State Bar No. 24091174
    Rwitmeyer@mayerllp.com
    **SUMMER L. FREDERICK**
    State Bar No. 24067764
    Sfrederick@mayerllp.com

    **MAYER LLP**

    750 N. Saint Paul Street, Suite 700
    Dallas, Texas 75201
    Telephone: (214) 379-4763
    Telecopy: (214) 379-6939

    **ATTORNEYS FOR DEFENDANT,**
    **ARCH SPECIALTY INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

      I hereby certify that on the 4th day of October 2024, I served a true and correct copy of the foregoing document on counsel of record using the Court's ECF filing service:

J. Mark Chevallier
McGuire, Craddock & Strother, PC
500 N. Ackard Street, Suite 2200
Dallas, Texas 75201
Telephone:   214-954-6860
Facsimile:   214-954-6868
mchevallier@mcslaw.com

    -and-

Julie L. Hammerman
Thompson Hammerman Davis LLP
1717 K St., NW, Suite 900
Washington, DC 20006
Telephone:   202-536-7529
Facsimile:   202-318-5356
jhammerman@thompsonhd.com

*Counsel for Plaintiff*
*Willow Bridge Property Company LLC*

                                    */s/ Robert J. Witmeyer*_____
                                    **ROBERT J. WITMEYER**