IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLOW BRIDGE PROPERTY COMPANY LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>ARCH SPECIALTY INSURANCE COMPANY,<br><br>*Defendant.* | § § § § § § § § § § § § | Civil Action No. 3:24-cv-00029-D |

PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................................... iii

SUMMARY OF REPLY ................................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

      I.     ARCH CANNOT "DISPUTE" UNCONTROVERTED ADMISSIONS AND CERTIFIED COURT DOCUMENTS .................................................................... 1

      II.    ARCH BEARS THE BURDEN OF PROVING THE APPLICABILITY OF EXCLUSION X, AND THAT BURDEN HAS NOT SHIFTED ........................... 3

      III.   THE ANTITRUST SUITS ALLEGE "WRONGFUL ACTS" ............................... 4

      IV.   EXCLUSION X IS NOT AN "ANTITRUST EXCLUSION" ............................... 5

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

## Cases

*Avenue5 Partners LLC, et al. v. Endurance America Specialty Insurance Co.*, No. 23-2-11110-9, 2024 WL 921951 (Wash. Super. Ct. Feb. 24, 2024) ........ 9

*Big Bridge Holdings, Inc. v. Twin City Fire Insurance Co.*, 132 F. Supp. 3d 982 (N.D. Ill. 2015)........ 7

*Integra Telecom, Inc. v. Twin City Fire Insurance Co.*, No. 08-906, 2010 WL 1753210 (D. Or. Apr. 29, 2010) ........ 6

*James River Insurance Co. v. Rawlings Sporting Goods Company, Inc.*, No. 19-6658, 2021 WL 346418 (C.D. Cal. 2021)........ 6

*Live Nation, Inc. v. Illinois National Insurance Co.*, No. 0702721, 2007 WL 9725132 (C.D. Cal. Sept. 28, 2007) ........ 9

*Saint Consulting Group, Inc. v. Endurance American Specialty Insurance Co.*, No. 11-11279, 2012 WL 1098429 (D. Mass. Mar. 30, 2012) ........ 8

*Settlement Capital Corp., Inc. v. Pagan*, 649 F. Supp. 2d 545 (N.D. Tex. 2009) ........ 2

*Williams v. Adams*, 836 F.2d 958 (5th Cir.1988)........ 2

## Statutes

15 U.S.C. § 1 ........ 5

## Rules

Fed. R. Civ. P. 56(c) ........ 2

Tex. R. Evid. 201 ........ 2

Plaintiff Willow Bridge Property Company LLC (formerly LPC Multifamily Holdco LLC d/b/a Lincoln Property Company) ("LPC") files this Reply in Further Support of its Motion for Partial Summary Judgment regarding Defendant Arch Specialty Insurance Company's ("Arch") Duty to Defend (ECF 34 & 35), and respectfully states:

## SUMMARY OF REPLY

Arch has failed to meet its heavy burden to show that its exclusion for "unfair trade practices or violation of consumer protection laws," construed narrowly to protect coverage and with ambiguities construed in favor of the insured, excludes defense cost coverage for the underlying lawsuits alleging violations of Section 1 of the Sherman Antitrust Act and its state law equivalents (the "Antitrust Suits"). The crucial disagreement is that Arch ignores the well-established distinction in the case law between antitrust laws, on one hand, and consumer protection laws, on the other. Exclusion X is a "consumer protection" exclusion only, not an antitrust exclusion. Accordingly, Arch cannot avoid coverage for the Antitrust Suits.

For the reasons further stated herein, LPC's Motion for Partial Summary Judgment on the Duty to Defend should be granted, and Arch's Motion for Summary Judgment denied.

## ARGUMENT

**I.  ARCH CANNOT "DISPUTE" UNCONTROVERTED ADMISSIONS AND CERTIFIED COURT DOCUMENTS**

Arch stands on its admission that "Arch has denied coverage for the Antitrust Suits *premised solely* on 'Exclusion X' in the Policy, which excludes Loss 'in connection with any claim for, based upon, arising from or in any way related to unfair trade practices or violation of consumer protection laws." ECF 21 (Second Amended Compl.) ¶ 37 (emphasis added); ECF 24 (Answer) ¶ 37 ("Arch admits the allegations in Paragraph 37"). Arch's untimely Motion to Amend its Answer does not address this Paragraph of its Answer, meaning that the point is now

1

conceded.[1] It is black letter law that this Court may consider Arch's Paragraph 37 admission in deciding a motion for summary judgment. *See Settlement Capital Corp., Inc. v. Pagan*, 649 F. Supp. 2d 545, 553 (N.D. Tex. 2009) (citing Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir.1988)) ("In making its determination on the motion, the court looks at the full record including the *pleadings*, depositions, answers to interrogatories, *admissions*, and affidavits.") (emphasis added). Arch cannot "dispute" its own uncontroverted admission on the record.

The Court also may consider persuasive precedent and the pleadings thereto when interpreting Exclusion X. It is black letter law that this Court may take judicial notice of a fact "not subject to reasonable dispute because it. . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Tex. R. Evid. 201. LPC attaches to its Motion the insurance policy and motion for partial summary judgment recently considered by the *Avenue5* court in reaching its finding of no coverage for one of LPC's co-defendants in the Antitrust Suits. The Exhibits are certified by the Clerk of the Superior Court of the State of Washington (ECF 35-1 at 105, 129), and available on Westlaw (ECF 35 at 13-14). Arch offers no basis (nor can it) to dispute the accuracy of the briefing and insurance policy considered by a court in a companion case. (It also is disingenuous gamesmanship for Arch to attempt to "distinguish" the *Avenue5* court order as having no "basis" (Resp. ¶ 59), when both the policy language and the insurer's defense to coverage are plainly evident from the appended court records.)

---

[1] Indeed, LPC cited to this very illogic as further evidence that Arch's Motion to Amend, limited to Paragraph 36 of its Answer, lacked credibility and merit.

## II. ARCH BEARS THE BURDEN OF PROVING THE APPLICABILITY OF EXCLUSION X, AND THAT BURDEN HAS NOT SHIFTED

Even though Arch's untimely Motion to Amend the Pleadings *is opposed* by LPC and still pending before this Court, Arch takes issue with LPC's summary judgment argument as though Arch's Motion to Amend was already granted.

As LPC foretold in its opposition to Arch's Motion to Amend, the prejudice posed by Arch's procedural maneuver is that Arch's true aim is not to correct an "inadvertent" mistake, but to shift the burden of proof from Arch (who bears the burden of proving the applicability of a policy exclusion, narrowly construed) to LPC (to prove that the Antitrust Suits trigger coverage) in a total about-face from Arch's long-standing agreement that trigger of coverage was not in dispute. Arch's prior concession is amply evidenced by the record, including: (i) its November 10, 2022 denial of coverage for the first-filed *Bason* antitrust suit based solely on Exclusion X and making no mention of a "trigger of coverage" defense that would have been "ripe" (had it been viable, which it was and is not) (*see* ECF 31-3 (Ex. C) at 341-43); (ii) its October 17, 2023 denial of coverage for the MDL based only on Exclusion X (*see* ECF 31-4 (Ex. D) at 354 ("Plaintiffs' allegations appear to fall directly within the scope of Exclusion X. . . . Accordingly, it appears coverage for the [MDL] is therefore precluded under Exclusion X.")); and (iii) its own admission in Paragraph 37 of its Answer, on which it still stands, that it "denied coverage for the Antitrust Suits premised solely on 'Exclusion X' in the Policy" (*see* ECF 21 ¶ 37).

As LPC further argued in the opposition to Arch's Motion to Amend, Arch makes too much of its Affirmative Defense in Paragraph 57 (copied verbatim from its 2023 denial of coverage) which conditionally states that "***[t]o the extent*** LPC does not face liability for Loss resulting from a Claim first made against LPC during the Policy Period or Extended Reporting Period for a Wrongful Act committed on or subsequent to the Retroactive Date, ***the insuring***

3

*agreement will not be triggered*." ECF 24 ¶ 57 & ECF 31-4 at p. 353 (all emphasis added). This affirmative defense is easily understood to relate to Arch's initial *fact* question (now resolved) regarding the timeliness of LPC's notice (i.e., whether the Claims were "first made during the policy period"). It cannot be true that this affirmative defense refers to Arch's new "Wrongful Acts" trigger of coverage argument. Were that the case, Arch would have stated this defense definitively, not conditionally, in both its Answer and prior denials of coverage. The defense to coverage has been "ripe" (but meritless) from the first allegation of conspiracy to fix prices.

In the face of LPC's strong opposition to Arch's Motion to Amend, Arch has no basis to argue that LPC needed to address trigger of coverage in its opening brief when Arch has until now broadcast that trigger of coverage was not in dispute. Arch has not, and should not, prevail in its effort to shift the burden of proof in contravention of the record in this case and at the eleventh hour.

### III.     THE ANTITRUST SUITS ALLEGE "WRONGFUL ACTS"

The lack of merit of Arch's argument aside, Arch's "Wrongful Acts" argument is not "the elephant in the room." ECF 39 (Resp.) ¶ 37. It is a red herring.

As LPC argued in its Brief in Support of Response to Arch's Motion for Summary Judgment (ECF 41 §I), which LPC respectfully incorporates fully herein, the Policy's definition of "Wrongful Act" includes all manner of intentional torts, as is typical for professional liability (a/k/a errors and omissions) insurance policies. The plain language of the Policy's "intentional acts" exclusions (Exclusions A and B) further contains express "defense costs exceptions" to the intentional act exclusions, promising valuable defense cost coverage for alleged-but-unproven allegations of "deliberately fraudulent or criminal acts or omissions," "willful violations of law," or illegal advantage. ECF 31-2 (Policy) at 313; ECF 41 (LPC Response) § I(b).

If Arch's purported "trigger of coverage" defense were the "silver bullet" that Arch now claims, it would have been the centerpiece of Arch's pre-litigation denials of coverage authored by its Senior Claims Examiner of Professional Liability Claims. But as Arch understood then, and this Court may conclude now, "negligence" is not the correct standard for determining trigger of coverage under a business risk errors and omissions policy generally, and under Arch's Policy in particular, with its clear promise to defend alleged but unproven intentional acts.

At minimum, the definition of "Wrongful Acts" cannot be squared with the defense cost exceptions to the intentional acts exclusions (i.e., Exclusions A and B), and the ensuing ambiguity must be construed in favor of coverage.

## IV. EXCLUSION X IS NOT AN "ANTITRUST EXCLUSION"

The Antitrust Suits assert specific causes of action: "Price Fixing in Violation of Section 1 of the Sherman Act (15 U.S.C. § 1)," or violation of state law equivalents. ECF 31-1 at 276, 278. The law distinguishes between antitrust violations as alleged in the Antitrust Suits, on the one hand, and laws prohibiting unfair methods of competition or unfair or deceptive acts or practices affecting commerce, on the other. Exclusion X, which excludes coverage for "unfair trade practices or violation of consumer protection laws," excludes coverage for the latter, and therefore is not applicable to preclude coverage in this case.

This interpretation of Exclusion X is supported by persuasive precedent from across the country (a) interpreting the same exclusionary phrase ("unfair trade practices");[2] (b) within the rubric of two distinct bodies of law (consumer protection laws, on the one hand, and antitrust

---

[2] The phase "violation of consumer protection laws" unambiguously excludes consumer protection claims, which, as LPC has argued here and in opposition to Arch's Motion for Summary Judgment, is separate and apart from the antitrust legal regime. LPC respectfully refers this Court to its Response to Arch's Motion for Summary Judgment (ECF 41), Section II(a) ("Violation of Consumer Protection Laws' Refers to Consumer Protection Claims").

laws, on the other); and (c) with the conclusion breaking in favor of coverage per coverage-enhancing rules of insurance contract interpretation that are identical to Texas law.

For example, *Integra Telecom, Inc. v. Twin City Fire Insurance Co.*, No. 08-906, 2010 WL 1753210, at *1 (D. Or. Apr. 29, 2010), addressed coverage for alleged violations of Washington's Consumer Protection Act ("CPA") under an exclusion for any claim:

> based upon, arising from, or in any way related to price fixing, restraint to trade, monopolization, **unfair trade practices** or any violation of the Federal Trade Commission Act, Sherman Anti-trust Act, Clayton Act, or any similar law regulating antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities.

(Emphasis in original). Despite this drumbeat of named antitrust statutes and anticompetitive acts, the insurance company nevertheless argued that the term "unfair trade practices" "should be broadly construed" to exclude not antitrust claims, but alleged violations of Washington's CPA. *Id.* at *4. The court found that interpretation to be "reasonable." *Id.* The policyholder's countervailing interpretation also was "reasonable," and therefore, "the term [was] construed in favor of the insured plaintiffs." *Id.* at *6.

Likewise, *James River Insurance Co. v. Rawlings Sporting Goods Company, Inc.*, No. 19-6658, 2021 WL 346418, at *4 (C.D. Cal. 2021) ("*Rawlings*"), addressed coverage for alleged violations of California's Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act under an exclusion for any claim:

> alleging, arising out of, based upon or attributable to any violation of any law, whether statutory, regulatory or common, as respects any of the following: anti-trust, business competition, **unfair trade practices** or tortious interference in another's business or contractual relationships[.]

(Emphasis added). Here too, the court held that the insurance company could plausibly argue that the phrase "unfair trade practices"—even contained as it was in a so-named "Anti-Trust Exclusion"—could reasonably refer to "the consumer protection claims" alleged in the

underlying action. The policyholder's countervailing interpretation also was reasonable, and the "ambiguity or uncertainty" in the insurance policy was "resolved against the insurer." *Id.* at *8 (internal citation omitted).

Finally, *Big Bridge Holdings, Inc. v. Twin City Fire Insurance Co.*, 132 F. Supp. 3d 982, 987 (N.D. Ill. 2015), addressed coverage for eight underlying lawsuits alleging violations of state Consumer Protection Acts and Deceptive Trade Practices Acts under an exclusion for any claim:

> based upon, arising from, or in any way related to any actual or alleged price fixing, restraint of trade, monopolization, **unfair trade practices** or any violation of the Federal Trade Commission Act, Sherman Antitrust Act, Clayton Act, or any similar law regulating antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities[.]

(Emphasis in original). Here again, the court found "appeal" in the insurance company's argument that the phrase "unfair trade practices" had "a consumer protection component," but the court found that the phrase was "at a minimum, ambiguous," and resolved the ambiguity in favor of the insured. *Id.* at 988, 990.

Here, Arch's policy language presents an even easier question of contract interpretation. The courts in *Integra*, *Rawlings*, and *Big Bridge* found the term "unfair trade practices" to be ambiguous, even though in each of those cases, the phrase was ensconced among a catalog of named antitrust statutes and a parade of antitrust conduct. Each court applied the principle of *noscitur a sociis* to assist with its interpretation of the policy language and found meaning in the phrase's surrounding antitrust statutes and behaviors. *See Integra*, 2010 WL 1753210, at *4; *Rawlings*, 2021 WL 346418, at *4; *Big Bridge*, 132 F. Supp. 3d at 987. By comparison, the phrase "unfair trade practices" in Arch's Exclusion X is coupled with "violation of consumer protection laws." Applying the principle of *noscitur a sociis* to Exclusion X, the phrase "unfair

7

trade practices" is reasonably understood to be a consumer protection exclusion, not an antitrust exclusion.

Arch points out that the two operative phrases in Exclusion X ("unfair trade practices <u>or</u> violation of consumer protection claims") are written in the disjunctive, to suggest that this "or" expands the exclusion's reach to antitrust claims. ECF 39 ¶ 52. The more reasonable interpretation is that the two operative phrases mean to refer to the wide-ranging body of consumer protection laws. For the sake of illustration, *Integra*, *Rawlings*, and *Big Bridge* involved underlying lawsuits alleging, *inter alia*, violations of numerous state Consumer Protection Acts, California's Unfair Competition Law and Consumer Legal Remedies Act; Illinois' Consumer Fraud and Deceptive Business Practices Act; New Jersey's Consumer Fraud Act, and Minnesota's Prevention of Consumer Fraud Act and Deceptive Trade Practices Act. "Unfair trade practices" and "violation of consumer protection laws" can together be read to exclude a broad range of consumer protection statutes, but nothing more.

Arch acknowledges that no jurisdiction, including Texas, has interpreted the exclusionary phrase "unfair trade practice or violation of consumer protection laws," ECF 39 at ¶ 47, yet asks this Court to ignore instructive extrajudicial cases interpreting "unfair trade practices" when deciding this case. The cases cited by LPC—each finding the phrase "unfair trade practices" to be ambiguous and construing the phrase narrowly in favor of the insured—are directly on point, and directly contradict Arch's conclusory insistence that, precedent notwithstanding, this very same phrase is somehow "clear" and "broad" in the Arch Policy.

Arch challenges LPC's case law as not involving allegations of antitrust violations, ECF 39 ¶¶ 56, 58, but LPC has cited to numerous cases on point. For example, in *Saint Consulting Group, Inc. v. Endurance American Specialty Insurance Co.*, No. 11-11279, 2012 WL

1098429, at *1 (D. Mass. Mar. 30, 2012), the insurance company denied coverage for antitrust suits per the policy's exclusion for:

> any Claim based upon or arising out of any actual or alleged price fixing, restraint of trade, monopolization or unfair trade practices including actual or alleged violations of the Sherman Anti–Trust Act, the Clayton Act, or any similar provision or any state, federal or local statutory law or common law anywhere in the world.

The court held that the claims of Sherman Act and Illinois Antitrust Act violations "obviously fall within" the exclusion. *Id.* at *3. In *Live Nation, Inc. v. Illinois National Insurance Co.*, No. 0702721, 2007 WL 9725132, at *2 (C.D. Cal. Sept. 28, 2007), the insurance company denied coverage for twenty-two underlying class action lawsuits alleging "anticompetitive and predatory practices," per the policy's exclusion for claims "arising out of antitrust violations, restraint of trade, or unfair competition, or violations of the Sherman Act, the Clayton Act or the Robinson-Patman Act[.]" The court held that "[t]he plain meaning of the exclusion at issue here is not difficult to discern. Claims arising out of Sherman Act violations are not covered." *Id.* at *10. Lastly, in *Avenue5 Partners LLC, et al. v. Endurance America Specialty Insurance Co.*, No. 23-2-11110-9, 2024 WL 921951 (Wash. Super. Ct. Feb. 24, 2024), the insurance company denied coverage for these very Antitrust Suits per the policy's exclusion for:

> price fixing, restraint of trade, monopolization, or any violation of the Federal Trade Commission Act, the Sherman Anti-Trust Act, the Clayton Act, each as amended, or any other federal, state, local, or foreign laws, regulations, or common law pertaining to antitrust, monopoly, price fixing, price discrimination, predatory pricing, or restraint of trade, or that otherwise protect competition[.]

*Id.* The court upheld the insurer's denial of coverage.

Arch's assertion that its exclusion "is *broader* than an exclusion that only names specific statutes or enumerates a list" (ECF 39 ¶ 54, emphasis in original) is not credible. Had Arch opted to use any of these robust and court-approved antitrust exclusions in its policies, the parties would not be here. Arch instead opted to use an untested phrase— "unfair trade practices or

9

violation of consumer protection laws"—that bears no resemblance to the above-cited antitrust exclusions and has been argued to be ambiguous *by insurance companies*, and deemed so by courts.

## CONCLUSION

For the foregoing reasons, Plaintiff LPC respectfully requests that the Court grant its Motion for Partial Summary Judgment on the Duty to Defend (ECF 34), deny Defendant Arch Specialty Insurance Company's Motion for Summary Judgment (ECF 36), and award LPC damages and such other and further relief as this Court deems just and proper.

Dated: October 4, 2024

Respectfully submitted,

*/s/ Julie Hammerman [10/4/2024]*
J Mark Chevallier (TX Bar No. 04189170)
**Rochelle McCullough LLP**
901 Main Street, Suite 3200
Dallas, Texas 75202
Telephone: 214.580.2530
Facsimile:  888.467.5979
Email: mchevallier@romclaw.com

Julie L. Hammerman (*Pro Hac Vice*)
**Thompson Hammerman Davis LLP**
1717 K St., NW, Suite 900
Washington, D.C. 20006
Telephone: 202.536.7529
Facsimile: 202.318.5356
E-Mail: jhammerman@thompsonhd.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

      I, Julie Hammerman, certify that on October 4, 2024, I served a true and correct copy of the foregoing document via electronic service on:

    Robert J. Witmeyer (TX Bar No. 24091174)
    rwitmeyer@mayerllp.com
    Summer L. Frederick (TX Bar No. 24067764)
    sfrederick@mayerllp.com
    Mayer LLP
    750 N. Saint Paul Street, Suite 700
    Dallas, Texas 75201
    Telephone: 214.379.6900
    Facsimile: 214.379.6939

    *Counsel for Defendant Arch Specialty Insurance Company*

                                    */s/ Julie Hammerman [10/4/2024]*
                                    Julie Hammerman