IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLOW BRIDGE PROPERTY COMPANY, LLC, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | Civil Action No. 3:24-CV-0029-D |
| ARCH SPECIALTY INSURANCE COMPANY, | § § § | |
| Defendant. | § § § | |

MEMORANDUM OPINION
AND ORDER

In this insurance coverage dispute, the parties' cross-motions for summary judgment present the questions whether defendant Arch Specialty Insurance Company ("Arch") has a duty under an insurance policy to defend plaintiff Willow Bridge Property Company, LLC, formerly known as LPC Multifamily Holdco LLC d/b/a/ Lincoln Property Company ("LPC"), in underlying putative class action lawsuits that have been consolidated in the United States District Court for the Middle District of Tennessee as part of multidistrict litigation—*In re: RealPage, Inc., Rental Software Antitrust Litigation*, No. 3:23-md-03071, MDL No. 3071 (M.D. Tenn.)—and a duty to indemnify LPC. The answers to these questions turn on whether, applying the Texas eight corners doctrine, coverage under the policy was triggered. For the reasons explained, the court concludes that Arch does not have a duty to defend or indemnify. The court therefore denies LPC's motion for partial summary judgment and grants summary judgment in favor of Arch dismissing LPC's suit.

I

LPC is "named as a defendant in thirty-five putative class action lawsuits" that allege that LPC participated in a conspiracy to violate federal and state antitrust laws ("Underlying Lawsuits").[1]  Stipulated Material Facts (hereafter, "SMF") (ECF No. 31) at ¶ 1.  The Underlying Lawsuits "have now been consolidated for pre-trial proceedings as part of a multi-district litigation . . . in the United States District Court for the Middle District of Tennessee."  *Id.* at ¶ 2.  The instant lawsuit arises out of the denial of LPC's related professional liability insurance claim.

LPC is insured by Arch under a Real Estate Developer Professional Liability Insurance Policy ("Policy").  Under the Policy, Arch agreed to pay for "Defense Costs" resulting from "a Claim first made against [LPC] during the Policy Period . . . for a Wrongful Act committed on or subsequent to the Retroactive Date [(October 1, 1991)]."  *Id.* at ¶¶ 8-9.  The Policy defines a "Wrongful Act" as "any actual or alleged negligent act, error or omission, misstatement, misleading statement, breach of duty or neglect or Personal Injury . . . solely in the performance of or failure to perform Real Estate Development Services."  SMF, Ex. B (ECF No. 31-2) at 312, ¶ 3-AA ("Wrongful Act definition").  The Policy defines "Personal Injury" as "any actual or alleged: 1. false arrest, detention, imprisonment or malicious prosecution; 2. wrongful entry or eviction; 3. invasion of the right of privacy or 4. libel, slander or other defamatory or disparaging material; or a publication or an utterance

_____

[1]The court recounts the background facts in accordance with the parties' stipulations of material facts.

- 2 -

in violation of an individual's right of privacy." *Id.* at 310, ¶ 3-R ("Personal Injury definition").

After Arch denied coverage for the Underlying Lawsuits, LPC filed the instant action, asserting claims against Arch for breach of contract and declaratory judgment. LPC seeks damages and a declaration that Arch owes LPC duties to defend the Underlying Lawsuits and for indemnification.

Arch moves for leave to amend its answer to LPC's second amended complaint and for summary judgment as to all claims and defenses. LPC cross-moves for partial summary judgment as to its breach of contract claim and opposes Arch's motions for leave to amend and for summary judgment. The court has heard oral argument.

## II

The court turns initially to Arch's motion for leave to file a first amended answer to LPC's second amended complaint.

### A

Arch has filed an untimely motion for leave to amend its answer to LPC's second amended complaint, which LPC opposes. Arch seeks by its motion to withdraw an admission in its current answer that the Underlying Lawsuits allege Wrongful Acts, thereby triggering Policy coverage. Before deciding whether Arch should be granted leave to amend, however, the court deems it advisable to address an apparent misconception about the significance that granting Arch's motion for leave to amend would have on deciding the merits of LPC's claims.

- 3 -

It is apparent from the briefs and oral argument that the parties view the disposition of Arch's motion for leave to amend as determining which party will bear the initial burden regarding Policy coverage. Under Texas law, "[t]he insured bears the initial burden of establishing that a claim against it is potentially within the policy's coverage." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004). If the insured meets its initial burden, "the insurer bears the burden of showing that the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of all claims[.]" *Id.* (emphasis omitted) (citing Tex. Ins. Code Ann. art. 21.58(b) (Vernon Supp. 1997)) (collecting Texas cases). Arch appears to contend that it should be granted leave to amend—and therefore to withdraw its admission that coverage was triggered under the Policy—so that LPC is not relieved of the initial burden of showing that the Underlying Lawsuits are potentially within the scope of the Policy.[2] LPC responds that leave should be denied because permitting Arch to withdraw its admission is tantamount to shifting the burden of proof to LPC. In LPC's view, if Arch's admission stands, LPC is relieved of its initial burden, and the only merits question to be resolved is whether Arch has met its burden to show that the plain language of a particular Policy exclusion—"Exclusion X"—bars coverage of the Underlying Lawsuits.

---

[2]The court acknowledges that Arch contends in its reply to LPC's response to Arch's motion for leave to amend that "[i]t was always LPC's burden to establish coverage as a threshold matter before examination of any exclusion." D. Reply (ECF No. 33) at 5, ¶ 19. Arch elsewhere posits in support of its motion, however, that the requested amendment is important because "[w]hether there was a Wrongful Act such that the Policy was triggered is central to Arch's case." D. Br. (ECF No. 30) at 6, ¶ 17 (emphasis omitted). Thus, at the very least, Arch appears to believe that its admission would impact the merits of LPC's claims.

The parties appear to be mistaken, however, about the relationship between the disposition of Arch's motion for leave to amend and the merits of LPC's claims. The determination of whether Arch should be allowed to amend does not govern whether LPC must bear the initial burden of showing that the Underlying Lawsuits are potentially within the scope of the Policy. This is so because Arch's *factual* admission cannot withdraw this question *of law* from contention.[3] Although "factual assertions in pleadings [are] conclusively binding on the party who made them . . . , a question of law for the court . . . is not a 'fact' that can be admitted." *Blankenship v. Buenger*, 653 Fed. Appx. 330, 335 (5th Cir. 2016) (per curiam) (cleaned up). And whether coverage was triggered under the

---

[3]The parties' summary judgment briefing, in which LPC could have argued that Arch was barred by estoppel or waiver from asserting coverage positions that it did not raise in its denial-of-coverage letters, might have presented a more appropriate forum. *See, e.g.*, *Nat'l Fire Ins. Co. v. Ent. Specialty Ins. Servs., Inc.*, 485 F.Supp.2d 737, 741 (N.D. Tex. 2007) (Lynn, J.) (quoting *Lancon v. Emps. Nat'l Life Ins. Co.*, 424 S.W.2d 321, 322-23 (Tex. Civ. App. 1968, writ denied)) ("In Texas, 'when one specific ground of forfeiture is urged against a policy of insurance, and the validity thereof denied on that ground alone, all other grounds are waived.'"); *but see Voyager Indem. Ins. Co. v. Beckham*, 2008 WL 11411312, at *4 (S.D. Tex. Aug. 26, 2008) ("Generally, the doctrines of waiver and estoppel cannot be applied to create coverage where none exists under the terms of the policy."). LPC may have made a passing reference to that argument in its response to Arch's motion for summary judgment. LPC contended that "Arch has waived the right even to argue [that coverage was never triggered under the Policy]" and that "[i]nsurers know that if they fail to raise all defenses to coverage in a timely fashion, they risk waiving those defenses." P. Resp. (ECF No. 41) at 5-6. But the only apparent support for this supposed waiver or estoppel argument is LPC's incorporation by reference of its response brief to Arch's motion to amend. And that brief's only relevant contribution is factual assertions that Arch did not contend in its denial-of-coverage letters that coverage was never triggered under the Policy. Without more, LPC has likely forfeited any waiver or estoppel arguments by failing to adequately brief them. *See, e.g.*, *Hee Sook Nam v. Tex Net, Inc.*, 2021 WL 535852, at *6, n.4 (N.D. Tex. Feb. 12, 2021) (Scholer, J.).

Policy—and thus whether LPC must bear the initial burden—is a question of law for the court. *See Lyda Swinerton Builders, Inc. v. Okla. Sur. Co.*, 903 F.3d 435, 445 (5th Cir. 2018) ("Under Texas law . . . .[w]hether an insurer has a duty to defend its insured is a question of law."); *N.Y. Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996) ("In Texas, . . . .[t]he interpretation of an insurance policy is a question of law.").

Thus regardless how the court rules on Arch's motion to amend, LPC bears the initial burden of showing that the Underlying Lawsuits are potentially within the scope of Policy coverage.

B

The court now addresses whether it should grant Arch's motion for leave to amend.

When, as here, the deadline to file a motion for leave to amend the pleadings has expired, a court considering a motion to amend must first decide whether to modify the scheduling order under the Fed. R. Civ. P. 16(b)(4) good cause standard. *See S & W Enters., L.L.C. v. S. Tr. Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003); *Am. Tourmaline Fields v. Int'l Paper Co.*, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998) (Fitzwater, J.). If the movant satisfies the requirements of Rule 16(b)(4), the court next determines whether to grant leave to amend under the more liberal standard of Rule 15(a)(2), which provides that "[t]he court should freely give leave when justice so requires." Rule 15(a)(2); *see S & W Enters.*, 315 F.3d at 536; *Am. Tourmaline Fields*, 1998 WL 874825, at *1.

The court assesses four factors when deciding whether there is good cause to modify the scheduling order to accommodate an untimely motion for leave to amend: "(1) the

explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S & W Enters.*, 315 F.3d at 536 (internal quotation marks and brackets omitted).

Arch contends that it had good cause for missing the June 12, 2024 deadline to move for leave to amend its pleadings. According to Arch, it exercised diligence by moving to amend as soon as it learned that, although "Paragraph 35 [of its answer] contained an [inadvertent] error[,]" it could not convince LPC to withhold opposition to its motion for leave, D. Br. (ECF No. 30) at 5-6, ¶ 16; the amendment is important because it concerns whether the Underlying Lawsuits trigger coverage under the Policy, which is an issue that is central to Arch's case; LPC would not be prejudiced by the amendment because Arch's contention that coverage was not triggered is not new and there is no additional discovery to be had; and a continuance of the deadline to draft stipulations for the parties' summary judgment briefing can readily cure any prejudice to LPC.

LPC responds that Arch has not shown good cause. LPC maintains that Arch deliberately admitted that coverage was not triggered under the Policy; Arch's alleged inadvertence "is *per se* insufficient to show good cause[,]" P. Resp. (ECF No. 32) at 8; Arch's amendment would be futile because coverage was triggered by the Underlying Lawsuits' allegations of intentional conduct; and Arch's amendment would prejudice LPC by "inject[ing] a fact issue into a dispute that the parties have long understood to center around a single question of law" and that does not require discovery, *id.* at 8-9.

- 7 -

C

1

The court first considers Arch's explanation for its failure to timely move for leave to amend.  Arch's offered justification—inadvertent error—is *per se* inadequate.  *See Banks v. Spence*, 114 F.4th 369, 372 (5th Cir. 2024) (citation, emphasis, and internal quotation marks omitted) ("[M]erely proffering an explanation is not enough.  Rather, that explanation has to be adequate, and an adequate explanation is something more than inadvertence.").  This factor therefore weighs against granting Arch's motion.[4]

2

The court next assesses the importance of Arch's amendment.

The court concludes that Arch's requested amendment is futile because the part of its answer that Arch seeks to revise is irrelevant to the dispositive merits questions of whether Arch owes duties to defend the Underlying Lawsuits and of indemnification.  *See, e.g.*, *Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 423 (5th Cir. 2013) (per curiam) (explaining that amendment was futile where it "would not have changed the outcome of the court's ruling on the [motion]").  As the court has already explained, Arch's *factual* admission that coverage was triggered under the Policy cannot withdraw this question *of law*

---

[4]LPC emphasizes in its briefing and stressed at oral argument its position that Arch engaged in gamesmanship, which Arch denies.  Although such strategic behavior would likely weigh against granting Arch leave to amend, the court need not decide whether Arch has engaged in gamesmanship because, regardless whether it has, Arch has not shown good cause to modify the scheduling order.

from contention.  *See Blankenship*, 653 Fed. Appx. at 335; *Lyda Swinerton Builders, Inc.*,

903 F.3d at 445; *N.Y. Life Ins. Co.*, 92 F.3d at 338.  And Arch's admission is not otherwise

relevant because, under Texas' "eight-corners rule . . , the court looks only to the third-party

plaintiff's pleadings and the provisions of the insurance policy in determining whether an

insurer has a duty to defend."  *Trammell Crow Residential Co. v. Va. Sur. Co.*, 643

F.Supp.2d 844, 849 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *GuideOne Elite Ins. Co. v.*

*Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006)).  This factor weighs against

granting leave to amend.

3

Finally, under the third and fourth factors the court considers the potential prejudice

in allowing the amendment and the availability of a continuance to cure such prejudice.

LPC contends that it will be "highly prejudiced" because Arch's requested amendment

"raise[s] an issue that could have and should have been raised years ago," "injects a fact issue

into a dispute that the parties have long understood to center around a single question of

law[,]" requiring no discovery, and shifts the burden to LPC to show that the Underlying

Lawsuits are potentially within the scope of the Policy.  P. Resp. (ECF No. 32) at 8-9.

The court is not persuaded that LPC will be unduly prejudiced if Arch is allowed to

amend its answer.  LPC will not suffer prejudice arising from the absence of discovery.  No

discovery is needed if Arch is permitted to amend because the question of whether coverage

was triggered is not a question of fact requiring discovery, but a question of law governed

by the eight-corners rule.  *See Colony Nat. Ins. Co. v. Unique Indus. Prod. Co.*, 487 Fed.

- 9 -

Appx. 888, 890 (5th Cir. 2012) (per curiam).  Nor would LPC suffer prejudice by the amended answer's "shifting the burden of proof" to LPC.  LPC has always been obligated to shoulder the initial burden of showing that the Underlying Lawsuits are potentially within the scope of Policy coverage, because Arch's admission cannot withdraw that question of law from contention. *See Blankenship*, 653 Fed. Appx. at 335*; Northfield Ins. Co.*, 363 F.3d at 528.  Nor would the requested amendment otherwise impact LPC's initial burden, because Texas' eight-corners rule limits the court's consideration to the allegations in the Underlying Lawsuits and the provisions of the Policy, a process that an insurer's pleadings do not govern. *See Trammell Crow Residential*, 643 F.Supp.2d at 849.

The only conceivable prejudice to LPC would arise from learning for the first time at this late stage that it must shoulder the initial burden.  For several reasons, this circumstance is not unduly prejudicial.

First, this potential prejudice is dubious.  Irrespective of Arch's amendment, LPC was always obligated to bear the initial burden as a matter of law.  Second, even assuming *arguendo* that LPC would suffer unfair surprise, its litigation conduct since Arch filed the instant motion to amend suggests that the resulting prejudice is only slight.  LPC has since stipulated to the material facts and briefed the trigger-of-coverage issue in its response to Arch's motion for summary judgment.  Third, LPC's supposed unfair surprise could be readily cured by a continuance.  Additional time would enable LPC to fully develop its

arguments in response to Arch's position that coverage was not triggered under the Policy.[5] These factors weigh in favor of granting leave to amend.

4

Applying the four factors holistically, the court concludes that Arch has not met its burden to show good cause to modify the scheduling order under Rule 16(b)(4). Arch's lack of an adequate explanation for its failure to timely move for leave to amend is sufficient to deny its motion. *See Banks*, 114 F.4th at 371. Additionally, granting Arch leave to amend would have no effect on the court's resolution of the merits. *See Klein v. Marvin Lumber & Cedar Co.*, 575 Fed. Appx. 347, 350 (5th Cir. 2014) (per curiam) (explaining in an analogous context that "[i]n any event, [plaintiff] was in no way prejudiced by the striking of the amended complaint[] . . . . [E]ven accepted as true, the additional alleged facts[] . . . do not defeat [defendant's] motion for summary judgment"). And neither the absence of undue prejudice to LPC, nor the availability of a continuance to cure such prejudice, is alone determinative. *See Matamoros v. Cooper Clinic*, 2015 WL 4713201, at *3 (N.D. Tex. Aug. 7, 2015) (Fitzwater, J.); *see also id.* at *2 ("Mere inadvertence on the part of the movant, and the absence of prejudice to the nonmovant, are insufficient to establish 'good cause.'").

Accordingly, the court denies Arch's motion for leave to amend its answer.

_____

[5]A continuance was always available to LPC if, as it contends, it required discovery or additional time to develop its trigger-of-coverage arguments. But LPC did not request a continuance. Instead, it stipulated to the material facts and briefed the trigger-of-coverage issue in response to Arch's motion for summary judgment, all before the court ruled on Arch's motion for leave to amend.

III

The court turns now to the parties' cross-motions for summary judgment, beginning with the question of duty to defend.

A

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 350 (5th Cir. 2021) (per curiam) (quoting Rule 56(a)). "Although this is an exacting standard, summary judgment is appropriate where the only issue before the court is a pure question of law." *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991) (citation omitted). This is such a case. The parties having stipulated to the material facts, "the only matter for resolution is a pure legal question:" whether under the Policy Arch has duties to defend the Underlying Lawsuits and for indemnification. *Id.*

Under Texas law, which undisputedly applies in this case, the "duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within the terms of the policy." *St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709, 713 (5th Cir. 2002). "Texas follows the 'eight-corners' rule, under which the court looks only to the third-party plaintiff's pleadings and the provisions of the insurance policy in determining whether an insurer has a duty to defend." *Trammell Crow Residential*, 643 F.Supp.2d at 849 (citing *GuideOne Elite Ins. Co.*, 197 S.W.3d at 308). "Neither facts outside the pleadings nor the truth or falsity of the allegations should be considered[.]" *Id.*

(quoting *GuideOne Elite Ins. Co.*, 197 S.W.3d at 308).

> If the four corners of a petition allege facts stating a cause of
> action which potentially falls within the four corners of the
> policy's scope of coverage, the insurer has a duty to defend. If
> all the facts alleged in the underlying petition fall outside the
> scope of coverage, then there is no duty to defend, but we
> resolve all doubts regarding duty to defend in favor of the duty.

*Liberty Mut. Ins. Co. v. Grahams*, 473 F.3d 596, 600 (5th Cir. 2006) (footnotes omitted).

The insured has the initial burden of showing that a claim is potentially within the

scope of policy coverage. *Northfield Ins. Co.*, 363 F.3d at 528 (citing Tex. Ins. Code Ann.

art. 21.58(b) (Vernon Supp. 1997)) (collecting Texas cases).

> Generally, insurance policies are subject to the same rules of
> interpretation as other contracts. If the policy terms are
> susceptible of only one reasonable construction, they will be
> enforced as written. If, however, the policy is susceptible of
> more than one reasonable interpretation, the court must resolve
> the uncertainty by adopting the construction that most favors the
> insured[—that is,]. . . . *contra proferentem.*

*Guar. Nat. Ins. Co. v. Azrock Indus. Inc.*, 211 F.3d 239, 243 (5th Cir. 2000) (footnotes

omitted), *overruled on other grounds as recognized by OneBeacon Ins. Co. v. Don's Bldg.*

*Supply Inc.*, 553 F.3d 901, 903 (5th Cir. 2008) (per curiam).

B

LPC contends that the Underlying Lawsuits are potentially within the scope of Policy

coverage because they allege Wrongful Acts. In support, LPC offers three theories. LPC

posits that, because the Policy defines Wrongful Acts to include Personal Injury, and defines

Personal Injury to include various intentional torts, the intentional conduct alleged in the

- 13 -

Underlying Lawsuits triggers coverage under the Policy. LPC posits in the alternative that two of the Policy's exclusions from coverage—Exclusions A and B—create in the Policy's trigger provision an ambiguity that "must be construed strictly against Arch and liberally in favor of LPC." P. Resp. (ECF No. 41) at 11. LPC maintains in the further alternative that Wrongful Acts must include at least the intentional conduct enumerated in Exclusions A and B to avoid reading those exclusions' carveback provisions out of the Policy.

C

Under the plain meaning of its text, the Policy's coverage provision is susceptible of only one construction: coverage under the Policy is triggered only by claims that allege either the negligent conduct enumerated in the Wrongful Act definition or the specific negligent and intentional conduct enumerated in the Personal Injury definition.

The court's analysis begins and ends with "the most important consideration in interpreting any contract: 'the plain meaning of the [Policy's] operative language[.]'" *Tier 1 Res. Partners v. Del. Basin Res. LLC*, 633 S.W.3d 730, 739-40 (Tex. App. 2021, pet. denied) (quoting *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 121 (Tex. 2015)). Under the coverage provision, Arch agreed to pay for "Defense Costs" that resulted from "a Claim first made against [LPC] during the Policy Period . . . for a *Wrongful Act* committed on or subsequent to the Retroactive Date [(October 1, 1991)]." SMF (ECF No. 31) at ¶¶ 8-9 (emphasis added). The Policy defines "Wrongful Act" to include certain negligent conduct—"actual or alleged negligent act, error or omission, misstatement, misleading statement, breach of duty or neglect or Personal Injury." SMF, Ex. B (ECF No. 31-2) at 312,

- 14 -

¶ 3-AA.  And the Policy defines "Personal Injury" to include specific negligent and intentional conduct: "any actual or alleged: 1. false arrest, detention, imprisonment, or malicious prosecution; 2. wrongful entry or eviction; 3. invasion of the right of privacy or 4. libel, slander or other defamatory or disparaging material; or a publication or an utterance in violation of an individual's right of privacy."  *Id.* at 310, ¶ 3-R.  Because these unambiguous "policy terms are susceptible of only one reasonable construction, they will be enforced as written." *Guar. Nat'l Ins. Co.*, 211 F.3d at 243.  And as written, coverage under the Policy is triggered only by claims that allege either the negligent conduct enumerated in the Wrongful Act definition or the specific negligent and intentional conduct enumerated in the Personal Injury definition.

LPC's alternative arguments lack force.  LPC contends that Exclusions A and B and their carveback provisions are probative of the meaning of the Policy's coverage provision.[6] Exclusions A and B provide:

> [Arch] shall not pay Loss . . . of [LPC] for, based upon, arising from, or in any way related to the gaining of any personal profit, remuneration or advantage to which [LPC] was not legally entitled[,] . . . [nor] any deliberately fraudulent or criminal act or omission or any willful violation of law by [LPC,] if established by any final non-appealable adjudication adverse to [LPC.]

SMF, Ex. B (ECF No. 31-2) at 313, ¶¶ 6-A, 6-B.  And their respective carveback provisions

---

[6]The court assumes *arguendo* that LPC's alternative arguments are not barred by the parties' stipulation that "the only other exclusions that Arch cites as defenses to coverage—Exclusions A and Exclusion B—do not apply to Defense Costs, and therefore are not relevant to determining Arch's duty to defend." SMF (ECF No. 31) at ¶ 17.

provide that the Exclusions "will not apply to Defense Costs." *Id.* at 313, ¶¶ 6-A, 6-B. LPC contends that when Exclusions A and B are read in conjunction with the Wrongful Act and Personal Injury definitions, the Policy produces an ambiguity that must be resolved in favor of coverage. LPC maintains in the further alternative that, because the carveback provisions for defense costs contemplate a duty to defend against claims that involve the intentional conduct enumerated in Exclusions A and B, Arch at the very least owes a duty to defend against allegations that involve that enumerated conduct; otherwise, the carveback provisions are rendered meaningless. The court disagrees.

Exclusions A and B cannot expand the scope of coverage beyond the plain meaning of the Policy's unambiguous trigger provision. *See Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 13 (Tex. 2007) (explaining that inferring coverage from carveback to exclusion was permissible because it comported with policy's broad trigger provision). And the court's construction of the trigger provision does not render the carveback provisions meaningless. *See Plotkin v. Joekel*, 304 S.W.3d 455, 469 (Tex. App. 2009, pet. denied) ("We consider the entire writing and attempt to harmonize and to give effect to all of the contract's provisions."); *Cincinnati Specialty Underwriters Ins. Co. v. F&H Constr. Co.*, 2023 WL 2529557, at *2 (S.D. Tex. Jan. 25, 2023) (citing *ATOFINA Petrochemicals, Inc. v. Cont'l Cas. Co.*, 185 S.W.3d 440, 444 (Tex. 2005) (per curiam)) ("A matter of policy construction cannot be resolved in a manner that renders any portion of the policy meaningless, useless, or inexplicable."). Under the court's construction, Arch owes a duty to defend LPC against claims that are based on the intentional conduct enumerated in

- 16 -

Exclusions A and B when that conduct also constitutes a Wrongful Act.[7]  Under this construction, the carveback provisions function to clarify that, when an underlying lawsuit alleges Wrongful Acts that trigger Arch's duty to defend, but for which Arch owes no duty of indemnification under Exclusions A and B, Arch remains responsible for "Defense Costs."

Accordingly, the Policy is susceptible of but one reasonable construction: coverage is triggered by claims that meet either the Wrongful Act definition or the Personal Injury definition.

## D

LPC has failed to satisfy its burden to show that the Underlying Lawsuits allege conduct that meets the Wrongful Act definition or the Personal Injury definition.

LPC contends that the Underlying Lawsuits allege intentional conduct—namely, deliberately fraudulent or criminal acts or omissions, willful violations of law, and illegal advantage—which falls within the ambit of the Policy's Wrongful Act definition.  But the court has rejected such an expansive construction of the Policy's trigger provision.  Coverage under the Policy is triggered only by claims that allege either the negligent conduct enumerated in the Wrongful Act definition or the specific negligent and intentional conduct enumerated in the Personal Injury definition.  Under this proper construction, it is apparent that the Underlying Lawsuits do not allege conduct that potentially falls within the scope of

---

[7]To take but two examples: a breach of fiduciary duty could be a Wrongful Act, as well as the gaining of personal profit to which one was not legally entitled under Exclusion A; and kidnapping could be the Wrongful Act of false imprisonment, as well as a deliberate criminal act under Exclusion B.

Policy coverage.

The Underlying Lawsuits allege that LPC "engaged in a nationwide conspiracy to fix and inflate the price of multifamily rental housing across the country," in violation of federal and state antitrust laws, SMF Ex. A (ECF No. 31-1) at 3, ¶ 1; that LPC knowingly agreed with other owners of multifamily residential properties—its horizontal competitors—to use a technology platform that leveraged these property owners' proprietary data to increase their revenue by "increasing rents without regard for the typical market forces that drive supply and demand in a competitive environment," *id.* at 9, ¶ 11; that LPC "entered and engaged in a contract, combination, or conspiracy to unreasonably restrain trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1)[,]" *id.* at 277, ¶ 702; and that LPC "entered and engaged in a contract, combination, or conspiracy to fix, raise, stabilize, or maintain at artificially high levels, the rents they charge for residential units in various states to unreasonably restrain trade and commerce in violation of [] various state antitrust laws," *id.* at 278, ¶ 709.

LPC's alleged participation in this conspiracy to commit antitrust violations does not involve any negligent conduct. *See Swift & Co. v. United States*, 196 U.S. 375, 396 (1905) ("Intent is almost essential to [conspiracy]."); *United States v. United States Gypsum Co.*, 438 U.S. 422, 436 n.13 (1978) (The "general rule is that a civil [antitrust] violation can be established by proof of either an unlawful purpose or an anticompetitive effect"). Nor does it implicate the specific intentional conduct enumerated in the Personal Injury definition (false arrest, detention, imprisonment, or malicious prosecution; wrongful entry or eviction;

invasion of the right of privacy or libel, slander or other defamatory or disparaging material; or a publication or an utterance in violation of an individual's right of privacy). Thus "all the facts alleged in the underlying petition fall outside the scope of coverage, [and] there is no duty to defend[.]" *Liberty Mut. Ins. Co.*, 473 F.3d at 600.

In sum, the court holds that the Policy covers only the negligent conduct enumerated in the Wrongful Act definition and the specific negligent and intentional conduct enumerated in the Personal Injury definition. The Underlying Lawsuits do not allege any of that enumerated conduct. Accordingly, because LPC has failed to meet its initial burden of showing that the Underlying Lawsuits are potentially within the scope of the Policy, Arch owes no duty to defend LPC against the Underlying Lawsuits. *See, e.g.*, *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 355 (5th Cir. 2005) (affirming summary judgment for insurer where, "[e]mploying the 'eight corners' doctrine as Texas law requires, the facts as alleged in the Petition indicate they fall outside the scope of the Policy; therefore, [insurer] has no duty to defend [insured]").

IV

Having concluded that Arch owes no duty to defend LPC against the Underlying Lawsuits, the court turns to Arch's contention that it owes no duty of indemnification.

Generally, "[a] suit for indemnity does not arise until some liability is established and made fixed and certain. This does not occur until judgment is rendered or until the lawsuit is settled." *In re State Line Fireworks, Inc.*, 387 S.W.3d 27, 32 (Tex. App. 2012, no pet.) (citation and internal quotation marks omitted) (quoting *Ingersoll–Rand Co. v. Valero Energy*

- 19 -

*Corp.*, 997 S.W.2d 203, 208 (Tex. 1999)). Once liability has been established, the "duty to indemnify is determined based on the facts actually established in the underlying suit." *Burlington N. & Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 334 S.W.3d 217, 219 (Tex. 2011) (per curiam).

Texas law recognizes, however, that an insurer can obtain a judgment regarding its duty to indemnify "when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (per curiam) (emphasis omitted); *see also Nat'l Am. Ins. Co. v. Breaux*, 368 F.Supp.2d 604, 620 (E.D. Tex. 2005) ("[I]t is now settled in Texas that a justiciable controversy exists such that an insurer's duty to indemnify an insured may be determined before a judgment is obtained in the underlying lawsuit."). This is such a case.

Arch's duty to indemnify is governed by the very provision that governs its duty to defend—the Policy's trigger provision. Thus for the same reasons that the Underlying Lawsuits do not trigger Arch's duty to defend, they cannot trigger Arch's duty to indemnify. Accordingly, Arch is entitled to summary judgment dismissing LPC's claim requesting a declaration that, under the Policy, Arch owes a duty to indemnify LPC with respect to the Underlying Lawsuits. *See, e.g.*, *Columbia Cas. Co. v. Ga. & Fla. RailNet, Inc.*, 542 F.3d 106, 111 (5th Cir. 2008) (affirming declaratory judgment for insurer as to duty of indemnification where "the district court's conclusion that the inhalation claim was not covered under the policy reflects the understanding that any resolution of the factual question

could not result in coverage under the policy"); *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 936 (N.D. Tex. 2009) (Fitzwater, C.J.) (granting declaratory judgment for insurer as to duty of indemnification where for same reason had no duty to defend).

Accordingly, the court holds that Arch is entitled to summary judgment dismissing LPC's claims based on an alleged duty of indemnification.

\* \* \*

For the reasons explained, the court denies Arch's August 5, 2024 motion for leave to file a first amended answer (ECF No. 30), denies LPC's August 30, 2024 motion for partial summary judgment (ECF No. 34), and grants Arch's August 30, 2024 motion for summary judgment (ECF No. 36). By judgment filed today, the court dismisses LPC's action with prejudice.[8]

---

[8]In its brief in support of its motion for summary judgment, Arch requests that the court "enter judgment that it has no duty to defend or indemnify LPC[.]" D. Br. (ECF No. 37) at 22. To the extent that Arch is requesting declaratory relief to that effect—as opposed to dismissal of LPC's claims—the court denies the request. Although the court concludes that Arch owes no duty to defend or indemnify LPC, Arch is not entitled to a declaratory judgment in its own favor because it did not plead for such relief and because denial of a counterclaim for declaratory relief is proper where, as here, such relief would be duplicative of the plaintiff's request for the same remedy. *See, e.g.*, *Meridian Sec. Ins. Co. v. Morris*, 2023 WL 5313905, at \*4 (E.D. Tex. Aug. 1, 2023) ("[C]ourts regularly reject declaratory judgment counterclaims as redundant when resolution of the plaintiff's substantive claim, along with the defendant's affirmative defenses, would necessarily resolve all issues raised by the declaratory-judgment counterclaim."), *rec. adopted*, 2023 WL 5309892 (E.D. Tex. Aug. 17, 2023).

**SO ORDERED**.

December 27, 2024.


_____
SIDNEY A. FITZWATER
SENIOR JUDGE